## BALLMAN v. D'ARCY SPRING CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—ACCIDENT ARISING OUT OF AND IN COURSE OF EMPLOYMENT—EVIDENCE—SUFFICIENCY.

    The department of labor and industry has no authority to award compensation, under the workmen's compensation act, for the death of an employee in the absence of evidence that the death was caused by an industrial accident arising out of and in the course of his employment.

2. SAME—DEATH—VIOLATION OF EMPLOYER'S ORDERS.

    Where an employee, hired to operate a machine in a factory, at his own suggestion, and in violation of his employer's orders, left the factory during working hours to go to a drug store to get some bromo-seltzer for his foreman, who had expressed a desire for same because he had a headache, and was killed on a railroad crossing

On right of employee injured while away from plant, primarily to serve a purpose of his own or of another employee, but which may incidentally benefit employer, to compensation under workmen's compensation acts, see note in 18 A. L. R. 525.

On injuries received while employee is violating the orders of the employer, see notes in L. R. A. 1918F, 914; 7 B. R. C. 159.

while returning from the drug store, his death was not
the result of an industrial accident in the course of his
employment within the meaning of the workmen's com-
pensation act.

3. SAME—EMERGENCY—EVIDENCE.
   Where the foreman continued at his work and was not
   incapacitated by his headache, the theory that deceased
   acted in an emergency to assist his sick and incapacitated
   fellow employee and incidentally to benefit his employer
   by helping to keep the foreman in a condition to con-
   tinue his work, has no application, since the facts do not
   sustain such theory.

4. SAME—RIGHT TO COMPENSATION IS A CONTRACTUAL ONE.
   That deceased acted from a generous impulse to be help-
   ful would not entitle him or his dependents to compen-
   sation under the act for injuries resulting from an acci-
   dent not arising out of and in the course of his employ-
   ment, since the right of compensation is a contractual
   one, arising out of the contract of employment, and where
   the sphere of his employment had been determined it
   could not be changed against the actual facts by his
   impulses or what he had in mind.

Certiorari to Department of Labor and Industry.
Submitted October 19, 1922.     (Docket No. 169.)
Decided March 22, 1923.

Helena Ballman presented her claim for compen-
sation against the D'Arcy Spring Company for the
accidental death of her husband in defendant's employ.
From an order awarding compensation, defendant and
the State Accident Fund, insurer, bring certiorari.
Reversed.

*Kerr & Lacey,* for appellants.

*Fred G. Stanley* and *H. Clair Jackson,* for appellee.

STEERE, J.   Helena Ballman made claim before the
department of labor and industry for an award of
compensation based on the death of her husband,

Peter Ballman, alleged to have arisen out of and in the course of his employment with the D'Arcy Spring Company which is engaged in the manufacture of cushion springs in the city of Kalamazoo. On October 5, 1921, Ballman was in the company's employ as a machine operator in its coiling room, department No. 2, where from 10 to 15 men were working under a foreman named Stevens. He had worked there nearly two years, and was familiar with its rules, his own work, and conditions in and around the factory. The foreman, Stevens, was a spring maker of many years' experience whose duties were the customary ones of a foreman in his department, exercising general supervision over the men and machinery for successful operation—and also, when anything went wrong with an operator's machine, to repair, adjust, or fix it.

On the day in question something went wrong with Ballman's machine and when he called Stevens' attention to it the latter started to remedy the trouble. Stevens had been subject to occasional headaches for several years and when he went to fix this machine he remarked to Ballman that he "would like to have went over and got some bromo-seltzer," to which Ballman replied, "I will go and get it for you while you fix the machine." Stevens said, "That will be all right," giving him some change to pay for it. Ballman then went out of the building, across the street and a short distance down it over a railroad crossing to a drug store near by. On his return he was killed while crossing the railroad track by a passing freight train. When picked up he was found to have with him a bottle of bromo-seltzer and a bar of chocolate.

Stevens repaired, or adjusted, the machine in a short time and was working upon another machine near it when he received word that Ballman had been killed. He heard of Ballman's death immediately

after it occurred.   When asked how long it was after Ballman left him he said, "I don't think it was hardly three minutes."   While he was working on the next machine after fixing Ballman's, the superintendent of the plant came into the room and asked where Ballman was, and he replied, "He was here just a minute ago—not over five minutes ago any way."

The company had a bulletin-board near the time clock located in department No. 2 where deceased was employed, upon which it posted notices from time to time, including rules of conduct for employees.   About a year before Ballman was killed it promulgated and published a "starting and stopping" order which was posted upon the bulletin-board forbidding employees from leaving the plant during working hours without permission of the superintendent or secretary and treasurer.   On September 2, 1921, a supplemental order calling attention to the previous one was posted on the bulletin-board and at other points in the plant, concluding as follows:

"The quitting bells will ring at three minutes of twelve o'clock and at three minutes to the closing hour, at which time all power will be shut off, and employees will have three minutes in which to prepare themselves previous to leaving the plant.
"NO EMPLOYEE SHALL, AT ANY TIME, LEAVE HIS DEPARTMENT PREVIOUS TO THE RINGING OF THE FINAL QUITTING BELL. (This portion of the order was conspicuously printed in capital letters.)
"This order is being put into effect, and will cover each and every employee in this plant.   Any abuse or deviation from the same will be sufficient reason for the release of said employee or employees."

Up to the time of Ballman's death no infringement of this order had been brought to the attention of the secretary and active head of the company.

Defendant had on its force a physician and surgeon, Dr. Snyder, regularly stationed at its plant, whose

·duty among other things was to look after emergency cases and temporarily care for the sick or injured employees at the plant. Stevens had applied to and received medicine from him for his headaches while working in the factory, both before and after this accident, to the extent as Stevens said that "Once in a while I would go in and maybe get a couple of aspirin tablets from him." The accident occurred late in the forenoon and Dr. Snyder was then away, having gone to the bank after obtaining permission to go from there to his home for dinner before returning to the plant. It is not shown Stevens knew this or that it would have made any difference if he had, as he wanted bromo-seltzer and the headache medicine he once in a while went to the doctor for was aspirin.

In reply to plaintiff's application to the department of labor and industry for compensation, defendant State Accident Fund filed written denial of liability on the ground that the accident did not arise out of or in the course of Ballman's employment, and that his death resulted from his own intentional and wilful misconduct in violating a positive rule of his employer. The arbitration proceedings were conducted at the city of Kalamazoo by a deputy commissioner of the department of labor and industry, who made an award in plaintiff's favor, directing defendants to pay her compensation to the amount of $12 per week for a period of 300 weeks. On appeal from this order to the commission of the department it was affirmed.

That the accident on the street at the railway crossing resulted in Ballman's death, the dependency of plaintiff, and amount of compensation as fixed by statute if liability existed, were conceded. Without reviewing the issues raised by defendant's objections or making any special findings of fact or conclusions of law disclosing its theory, the commission filed only a formal order affirming the award, finding that,—

"there was an accident within the meaning of the compensation act arising out of and in the course of the employment of deceased."

Concededly the commission had no authority to award compensation in the absence of evidence that Ballman's death was caused by an industrial accident arising out of and in the course of his employment. Not only does the act so provide, but this court and other jurisdictions with similar workmen's compensation laws have so often had occasion to emphasize that axiomatic proposition that citation of authorities is needless.

Ballman was employed to operate a machine in the coil room of the D'Arcy Spring Company's factory. That was the range and scope of his employment. His duties required his presence in that room during working hours. Orders issued by his employer forbid him leaving his work and place of employment during that time. In violation of orders he left the plant, went across and down the street to a railway crossing and assumed a risk in no sense incident to his employment as a machine operator in his employer's factory. Neither can it be even inferred from the facts shown that his volunteered errand was in his employer's interest or in any way tended to promote its business of manufacturing springs at its plant where both Stevens and he were employed in the coiling department.

The evidence does not sustain plaintiff's contention that deceased was in the course of his employment while away from the factory because ordered to go by his foreman. It was his proposal. He volunteered to go on an errand for Stevens who simply said it would be all right, but within three minutes forgot it, as he testified when the superintendent of the plant came into the room and asked where Ballman was. No duty in the line of his employment required Ballman

to leave the plant. He went during working hours at his own suggestion, in the interest of Stevens or himself or both, away from the plant, to a drug store where he got some bromo-seltzer and a bar of chocolate. In going he violated an order of his employer and was doing nothing to advance its interest.

The rule upon that subject is thus stated in 26 Cyc. p. 1224:

"Where a servant voluntarily and of his own motion exposes himself to risks outside of the scope of his regular employment, without or against the order of the master or vice-principal, and is injured thereby, the master is not liable."

Plaintiff's counsel seek to bring her claim under the statute on the theory that Ballman acted in an emergency to assist his sick and incapacitated fellow-employee, and incidentally to benefit their employer by helping to keep him in a condition to continue his work. The facts do not sustain that theory. No emergency is shown. Although Stevens testified he was subject to headaches and had a headache that day, the record does not even show that Ballman was so informed by him or knew either fact from any source, unless he inferred it from Stevens' expressed desire to go for some bromo-seltzer. Stevens did not tell Ballman he was sick or unable to continue his duties and adjust the machine for him. He "went over there to fix it" at the time he spoke of wanting to get a bromo-seltzer. He did fix it in a very short time after he looked at it and was at work on another machine within a space of time which he estimates as "hardly three minutes." Headaches had not interfered with Stevens' working since Ballman was employed there two years before. Asked on cross-examination the last time he had to stop work on account of a headache, Stevens replied, "That is something I couldn't tell you." Asked further, "But not for the last

several years?" he replied, "No, sir." Had Ballman even waited until Stevens saw what was wrong with his machine he could have resumed his work operating it within from one to three minutes according to Stevens' estimate, and, presumptively, would have been doing so at the time he met his death from an accident away from the place of his employment, resulting from a risk foreign to it.

It may be conceded Ballman's unfortunate offer and act resulted from a generous impulse to be helpful with no thought that harm to him or delay in his work might result in his leaving the plant; but his employment was a contract and his, or his dependent's, right to compensation if he suffered an accidental injury in the course of or arising out of his employment was contractual. The nature and sphere of his employment having been determined, it could not be changed against the actual facts by his impulses or what he had in mind. He was employed to do a particular work at a particular place and left it during working hours for a mission which served his employer no useful purpose, and encountered a fatal risk which bore no relation to his employment. In the somewhat analogous case of *Clark* v. *Clark,* 189 Mich. 652, where claimant went to the assistance of his brother, for whom he worked and who was assaulted, it was said:

"It may have been commendable in him to volunteer to assist his brother against such great odds, but that does not satisfactorily answer the question what connection his acts had with his employment.  *  *  * Had claimant remained at his work he would not have been injured. His presence at the place of fighting was in pursuance of no demand of his employment. Neither was it in aid of any material interest of his master."

*Vide,* also, *Bischoff* v. *Foundry Co.,* 190 Mich. 229; *Carnahan* v. *Mailometer Co.,* 201 Mich. 153; *Pearce*

v. *Industrial Commission*, 299 Ill. 161 (132 N. E. 440, 18 A. L. R. 523).

In volunteering this errand for Stevens, Ballman assumed a task unexcused by habit or custom, outside the place and line of his employment, not in pursuance of the interest of his employer; in the absence of any peril requiring him to act in an emergency and involving a risk not belonging to or connected with what he was required to do in fulfilling his contract of service. The errand upon which he went was not negligent or unauthorized conduct within the sphere of his employment, which in itself does not necessarily prevent recovery, but an act involving street and railroad risks entirely outside of and beyond the limits of such sphere. An order from Stevens for plaintiff to leave the plant and place of his employment during working hours in violation of published rules, presumably known to both, would have been beyond his authority as foreman in the coiling room, as was his consent which he so soon forgot when the superintendent inquired for Ballman.

In *Pearce* v. *Industrial Commission, supra,* claimant was injured by a fall upon the sidewalk in a public highway while going to get supplies for the noonday lunch of himself and fellow employees in a building near by, who had an agreement among themselves to purchase supplies to be prepared and consumed by them in the building where they were employed in preference to carrying cold lunches. Pearce was general agent of the building and under him the chief engineer was authorized to look after details. He was authorized to hire and discharge most of the employees, including claimant. On that day the engineer told him to go for their noonday supplies, in doing which he fell in the street and was injured. Although he was acting under orders of his superior, the court there held claimant's injuries while absent from his

place of employment on such errand did not arise out of his employment within the meaning of the compensation act.

A valid award requires correct application of the act to found facts of which there is evidence. This record fails to furnish any evidence of certain essential facts on which to base the formal conclusion of the commission that the accident in question "arose out of and in the course of" Ballman's employment. Its order of award is therefore reversed.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, and SHARPE, JJ., concurred. MOORE, J., did not sit.