# CONTINENTAL CASUALTY CO. et al. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 4856.   Decided December 11, 1929.   (284 P. 313.)
Rehearing Denied January 29, 1930.

George H. Smith, Robert B. Porter, and W. Hal. Farr, all of Salt Lake City, for plaintiffs.

George P. Parker, Atty. Gen., and M. Logan Rich, Asst. Atty. Gen., for defendants.

FOLLAND, J.

This is a review of an award of compensation in favor of Corwin R. Graves, a taxicab driver in the employ of the Yellow Cab Company. The facts are fairly stated in the findings of the Industrial Commission as follows:

"That on the 13th day of May, 1928, the applicant, Corwin R. Graves, pursued his duties as a taxi-cab driver for the said Yellow Cab Company and called at Rowland Hall early in the morning to pick up two passengers and haul them to the depot; upon his arrival at Rowland Hall he called for his passengers and carried two suit cases to the taxicab for his passengers, and while applicant descended the stairway with a suit case in each hand his heel caught on the edge of one of the stair steps causing him to lose his balance. That he swung around and fell down one or two steps, thus causing him to severely wrench his left leg in the region of the hip and socket joint, causing a weakening and injury to said leg; that he dropped the baggage and grabbed the stair rail in order to keep from falling down the stairs. That he sat down and rested for a moment and continued with his baggage to the taxi-cab; he then drove his passengers (finding the passengers seated in the taxi-cab) to the depot and retured to his employer's place of business, checked in and went to his home, suffering great pain. He reported the accident within a reasonable time; he reported back for work on the next regular shift and performed his duties as a taxi-cab driver, notwithstanding the fact that he was suffering great pain and discomfort; he was able to continue his employment by reason of the nature of his employment, that of taxi-cab driver.

"That by reason of the weakened condition of applicant's left leg, said weakness resulting from the severe injury and wrench sustained to said leg on May 13th, 1928, he fell down upon the sidewalk on the 16th day of May, 1928, while he was on his way to

work, between his home and the car line, and then and there fractured his left leg at the hip. The latter accident of the two was entirely due to the former injury of May 13th, 1928, by reason of the fact that the applicant was unable to bear his full weight on the said injured limb, this being the result of the weakened condition caused by the accident of May 13th, 1928. The injury of May 13th, 1928, caused the applicant to lose his balance, resulting in his falling on the sidewalk on May 16th, 1928, thus fracturing his left leg at or near the hip joint. The applicant, prior to May 13th, 1928, suffered no disability to his leg and was able to satisfactorily perform his regular work, and at no time prior to May 13th, 1928, did the applicant suffer any disability to his left leg that in any way interfered with his employment."

The conclusions from these facts, so far as necessary to state here, are:

"In view of the foregoing findings, the Commission concludes that the applicant herein named, on the 13th day of May, 1928, was injured by reason of an, accident arising out of or in the course of his employment while regularly employed by the Yellow Cab Company, and that the injury sustained by him on the 16th day of May, 1928, was the direct result of the injury sustained on May 13th, 1928."

It is contended by petitioners "that the alleged accident to claimant on May 13, 1928, did not contribute to his injury on May 16th and that the decision of the Industrial Commission awarding him compensation rests entirely upon conjecture." An award cannot rest upon mere conjecture or possibility. *Bingham Mines Co.* v. *Allsop*, 59 Utah 306, 203 P. 644. However, in reviewing a record every legitimate inference which can arise from the evidence must be drawn in favor of an employee where, as here, the commission has made findings and an award in his favor. There must be evidence, however, and not mere conjecture. *Robertson* v. *State Ind. Acc. Comm.*, 114 Or. 394, 235 P. 684.

The legal principles applicable to this case have been well stated in Workmen's Compensation Acts, a Corpus Juris treatise, at page 70 as follows:

"In determining whether the physical harm sustained by the employee was the consequence of the accident or the injury, the controlling question is the continuity of the chain of causation and the absence of an intervening independent agency; the inquiry as to whether the result is the natural and probable one is immaterial."

The problem before us is to determine from the record whether there is sufficient competent evidence showing such a "continuity of the chain of causation" as that it might be said that the fracture of the bone on the 16th of May was caused or contributed to by the accident and resulting injury on May 13th, and also showing "the absence of any intervening independent agency" causing such fracture. From a careful reading of the record, we are of the opinion that there is evidence to support the commission's findings and conclusions as to both propositions. That the employee was injured on May 13th while performing duties in the employ of the company is not disputed. It is well established by the evidence that he suffered pain and inconvenience, and continued to limp following such accident, notwithstanding he continued his work for the company. That the condition of his leg which caused pain and limping caused or contributed to the fracture of the bone on the 16th is shown by the evidence of the employee, a part of such evidence being as follows:

"Q. Then what happened? A. As I was walking down the sidewalk going to work I made a slight slip with my foot and this caused me to take the weight of my body entirely on this leg.

"Q. You mean the left leg. * * * When you fell on the 16th you were on the pavement or sidewalk? A. I was walking on the sidewalk, yes, and the hip joint gave way and came out while I was standing on my feet, causing a hot sensation to come over me, and I could not support myself.

"Q. And you went down? A. I went down, fracturing the bone.

"Q. In the hip? A. Yes. The injury of the 13th bothered me every step I took afterwards. * * *

"Q. You didn't stumble over anything on the 16th? A. No sir.

"Q. Just walking along. A. No sir, just walking along the sidewalk, and it was perfectly clear."

That a casual relationship existed between the injuries is also shown by the testimony of the medical expert, a part of whose testimony is as follows:

"Q. Would you say that the injury on May 13th had some bearing on the one of the 16th? A. Yes, very likely contributed to his inability to support himself, and prevent having an additional fall.

"Q. In other words, you think it was contributory? A. It probably contributed to his fall the second time.

"Q. By weakening the left leg? A. By the pain which he apparently sustained in supporting all his weight was too severe, assuming that history is correct, so severe that he actually fell and then sustained a fracture.

"Q. Did you have any conversation with the applicant regarding the injury on the 13th, how it affected him the day of the fall? A. Yes. He told me substantially the same story as is in the record."

After a careful search, we have been able to find only one case in the books where the facts are practically identical with the facts in this case. That is *Hodgson* v. *Robins,* 7 B. W. C. C. 232, decided by the Court of Appeal, England. In that case a charwoman in the employment of a firm of solicitors claimed compensation for an injury to her knee alleged to be due to slipping on the office stairs. On the morning of July 8th she alleged she was coming down stairs in the offices, and her leg gave way under her, bruising it. She did further work that day, but went home early. Next day she came to the office as usual, but limped, and said she felt pain in her leg. After returning home, she slipped on her own kitchen stairs, and found herself unable to move. She was taken to a hospital, where it was found that her kneecap was fractured, and an operation was performed. The master of the rolls, in deciding this case, said:

"The learned Judge has held that there is a sufficient connection between what took place on Tuesday at the office and what took place on Wednesday at her own house to justify him in concluding that the breaking of the knee-cap on the 9th was really a result of what took place on the 8th. I am bound to say that I think we could not set aside that finding, even though, on reading the evidence, we might be disposed to arrive at a different conclusion. So far as that goes, I think the present appeal fails. I think there was

evidence of an accident 'arising out of and in the course of the employment,' resulting in the breaking of the knee-cap on the following day."

A recent case decided in this court illustrates the principles upon which this decision stands. In *Gunnison Sugar Co.* v. *Industrial Commission* (Utah) 275 P. 777, 779, the employee, who had been injured in the back in the course of his employment, had his teeth extracted unnecessarily through mistaken or negligent advice of a physician. This court, speaking through Mr. Justice STRAUP, held that this "cannot be said to be due to an independent and intervening cause but must be held attributable to the accident resulting in injury which as a primary cause set in motion a train of events from which the aggravated condition resulted."

The following cases, while not directly in point as to the facts are illustrative, and sustain the position taken by us. *Head Drilling Co.* v. *Industrial Acc. Comm.*, 177 Cal. 194, 170 P. 157, 16 N. C. C. A. 550; *Reiss* v. *Northway M. & M. Co.*, 201 Mich. 90, 166 N. W. 840; *Deem* v. *Kalamazoo Paper Co.*, 189 Mich. 655, 155 N. W. 584; *Cook* v. *Charles Hoertz & Sons*, 198 Mich. 129, 164 N. W. 464; *Colvin* v. *Emmons*, 216 App. Div. 577, 215 N. Y. S. 562; *Dunham* v. *Clare*, [1912] 2 K. B. p. 292.

The award of the Industrial Commission is sustained.

CHERRY, C. J., and ELIAS HANSEN, J., concur.

STRAUP, J. I dissent. Admittedly the first accident occurred in the course of the employment of the applicant. Admittedly the second accident did not. On the record I do not see wherein the injury sustained by him on the second accident—a fracture at the base of the neck of the femur—was attributable to the first accident or that it was the proximate cause of the injury, the fracture of the femur, for which compensation was awarded.

The commission undertook to find that the injury was attributable to the first accident, that it was the proximate

and direct cause, or at least that the injury sustained in the first accident was a contributory cause. The findings in such particular are challenged as being unsupported by sufficient evidence to warrant or justify them. I think the contention is well founded. As to the first accident, the applicant testified that on May 13, 1928, while calling at a building for passengers, and while carrying two suit cases down a stairway, the heel of his left leg was caught on the top of a step, which caused him to miss his footing and "swing around going down one or two steps," and wrenching his left leg and hurting him in the hip; that he sat down for a minute, and then went on with his work, taking the passengers to their destination. Evidence was given to show that he thereafter limped some, and complained of pain in his leg and hip, but continued with his work from day to day, driving and operating a cab until May 16, 1928, when he met with the second accident. The second accident he described as follows: On the morning of the 16th as he was walking down the street on the sidewalk to catch a street car to go to his work, not "hurrying extraordinarily for the car" but walking at a good gait, as he testified, he slipped and fell, fracturing the femur at the base of the neck. The accident may be best described in his own language.

"As I was walking down the sidewalk going to work I made a slight slip with my foot, and this caused me to take the weight of my body entirely on this leg.

"Q. You mean the left leg? A. Yes, it flipped right out of the socket.

"Q. And you went down? A. Yes. And I claim the injury of the 13th was the direct cause of my fall. * * * I was walking on the sidewalk, yes, and the hip joint gave away and came out while I was standing on my feet, causing a hot sensation to come over me, and I could not support myself.

"Q. And you went down? A. I went down, fracturing the bone.

"Q. In the hip? A. Yes. * * *

"Q. You didn't stumble over anything on the 16th? A. No sir.

"Q. Just walking along? A. No sir, just walking along on the sidewalk, and it was perfectly clear.

"Q. In a natural way? A. Yes sir.

"Q. And while walking along your left leg gave way?  A. Yes.

"Q. And you fell down?  A. Yes, through a sudden step.  It would not support the weight and it just flipped out.

"Q. How did you say it fell out; you say it flipped out?  A. The muscle drew the leg up, the bone being out of the socket, and a rather hot sensation flashed over me.  I didn't exactly faint, but I felt weak. * * * I didn't fall until the leg was entirely out of the socket. * * * I seen it was out because it flips out here, and a short time severe pain in the muscles. * * * You can feel it.  It flips out and protrudes * * * I stepped on a little piece of mud and slipped just a slight slip.  I didn't lose my balance."

The applicant was the only witness who testified concerning the happening of the accidents and how they occurred.  His theory was that the first accident dislocated, or partially dislocated, the hip joint, causing the bones to "protrude" and "flip" out and in, and, as he was walking along the sidewalk and throwing the weight of his body on the left leg, the bone "flipped out of the socket," throwing him on the sidewalk and fracturing the neck of the femur. After the fall, he was taken to a nearby hospital, where a physician and surgeon was summoned who attended him. The physician was called as a witness on behalf of the applicant.  The direct examination was conducted by the chairman of the commission.  The witness testified that on his examination and on X-ray pictures a fracture at the base of the neck of the left femur was revealed, but that there was no displacement or subluxation of the hip.  Then the chairman of the commission propounded to the witness a so-called hypothetical question in which he recited the happening of the first accident whereby the applicant slipped on a stairway and wrenched "his left leg and hip"; that thereafter he complained of pain and limped, but continued on with his work; that three days thereafter he stepped on a piece of mud and his right leg slipped, throwing his weight on the left leg; "that the pain was very severe; that his left hip was protruding, and he went down unable to support himself on his left leg," and, assuming the applicant's testimony to be true, the physician was asked

whether the injury sustained by the applicant on the first accident "so weakened his left leg that it made him susceptible to the fall he sustained on May 16th." Though the question was so put as to show the wish to be father to the thought, and with the expected hope that the witness would himself decide the case—express an opinion on the ultimate and essential issue which the commission was itself required to answer—yet the witness but answered:

"That is a pretty difficult question to answer accurately. There may have been some weakness from the original fall. On the other hand, he may have sustained a fracture without any previous injury, with this type of fall."

The witness further answered that the X-ray examination revealed a chronic condition of the bone of long standing which had the appearance of a chronic osteomylitis of the bone; that, while he had not definitely diagnosed the condition as osteomylitis, but stated there was an undoubted chronic condition of a weakening of the bone of long standing which had the nearest resemblance of osteomylitis. Such testimony was not disputed.

Then the commissioner asked the witness that, "assuming the applicant has testified to the truth," and again reciting the testimony of the applicant with respect to the two accidents, and that on the second accident the applicant threw "all his weight" on the left leg, and could not sustain himself, and fell and fractured his left hip, "do you connect the injury of May 13th, assuming the facts as I have related them, with the fall of the 16th?" The witness answered:

"There is a bare possibility of the first injury weakening the bone to a slight extent, but not a bone fracture, however, because I don't believe it would be possible for him to continue the use of the leg for three days in the presence of a fracture,—the first injury might have been sufficient to call his attention to the condition he already had.

"Q. And that be sufficient to weaken himself so he could not sustain himself as he had been able to do before May 13th? A. That is impossible to tell.

"Q. Would you have to rely largely upon the applicant himself as to that? A. I think the only definite answer that could be given, you would have to have a picture immediately following the first injury."

Then, in response to further questions, the witness answered that, in the absence of pictures, he would have to rely largely on the history given him by the applicant, "but, on the other hand, a diseased condition of the bone like this may be fractured at any time with a comparatively trivial amount of injury or trauma."

Then the commissioner propounded a further hypothetical question to the witness, again reciting that it be assumed the applicant had pain in his hip whenever he put his weight on the left leg, experienced pain when he used his foot on the pedal of the automobile, and that, when he slipped on the morning of the 16th and threw his weight on the left leg, "it was so painful he could not sustain himself and fell over. Assuming that to be the fact, would you say that the injury of May 13th had some bearing on that of the 16th?" Then the witness answered as set forth in the prevailing opinion that:

"Yes, very likely contributed to his inability to support himself, and prevent having an additional fall.

"Q. In other words, you think it was contributory? A. It probably contributed to his falling the second time.

"Q. By weakening the left leg? A. By the pain which he apparently sustained in supporting all his weight was too severe, assuming that history is correct, so severe that he actually fell and then sustained a fracture.

"Q. Did you have any conversation with the applicant regarding the injury of the 13th, how it affected him the day of the fall? A. Yes, he told me substantially the same story as is in the record."

There the quotation in the prevailing opinion ends, but immediately following that the witness was asked:

"Q. With that history am I to understand that you think the fall of May 13th was a contributory cause to his fall on May 16th? A. It might contribute to the fall. I would not say that it did

contribute. I could not say that it would be a part of the final fracture."

Thus, when the whole of the testimony of the physician is considered, as I think it should be, I think it clear that, notwithstanding the frequent admonitions of the commissioner that the witness was required to assume as true everything testified to by the applicant, yet no opinion was expressed by him that the first accident or the first injury was a contributory cause to the second accident or to the second injury, and that his testimony, viewed in a light most favorable to the applicant, is that, because of the pain claimed to have been suffered by the applicant, the first fall "might have contributed" to the second fall, but he would not say that "it did contribute," and that there was only a bare possibility that the first injury weakened the bone to a slight extent, but that it was not the cause of the fracture. Evidence even before the commission that a condition or matter required to be proven "might" have occurred or that there was a "possibility" that it did occur is mere conjecture and wholly insufficient to establish the matter required to be proven.

On the record I think it clear that, as the applicant was walking down the street at a good gait to catch a street car, he slipped and fell, and, because of such fall and of the undisputed osteomylitis condition of long standing of the bone of the femur, he fractured the neck of it as he fell on the sidewalk, and that such outstanding factor may not be pushed aside by the ridiculous and absurd claim of the applicant, and on its face self-impeached, that after the first fall he was walking and moving around performing the ordinary duties of his work with the bone of the hip "protruding" and "flipping" in and out of the socket as he threw his weight off and on the left leg.

In *Rollow* v. *Ogden City*, 66 Utah 475, 243 P. 791, this court said that the proximate cause of an injury is the primary and moving cause, without which it would not have

been inflicted, but which in the natural and probable sequence of events, and without the intervention of any new or independent cause, produced the injury. Measured by this test, I think it clear that the first accident or injury was not, in any sense, the primary cause which, in the natural and probable sequence of events, and without the intervention, of a new or independent cause, produced the fracture of the femur for which compensation was awarded, but that such injury was produced by a new and independent cause, for which the employer was not liable, and which was not compensable.

I therefore think the award should be set aside.

EPHRAIM HANSON, J. I concur in the views expressed by Mr. Justice STRAUP in his dissenting opinion.