## JONES v. INDUSTRIAL COMMISSION et al.

No. 5670.   Decided October 8, 1936.   [61 P. (2d) 10.]

*D. N. Straup,* of Salt Lake City, and *J. Wesley Horsley* and *Lewis Jones,* both of Brigham, for plaintiff.

*Joseph Chez,* Atty. Gen., *Grover A. Giles,* Deputy Atty. Gen., and *F. A. Trottier,* of Salt Lake City, for defendants.

ELIAS HANSEN, Chief Justice.

Plaintiff herein applied for, but was denied, compensation by the Industrial Commission of Utah. He brings the cause here for review. In his application for compensation filed with the commission, plaintiff alleged that on June 4, 1932, while in the course of his employment as city judge of Brigham City, Utah, he, in an automobile accident, sustained an injury to his "left limb, ankle and toes, and arteries and veins and nerves and disability followed with loss of the bodily function." At the time of the alleged injury the State Insurance Fund was the insurance carrier of the defendant Brigham City. Payment of compensation was resisted on behalf of the State Insurance Fund. After three hearings were had on the application, the commission made and entered the following findings and order:

"On June 4, 1932, and for several years prior thereto and thereafter, B. H. Jones, the applicant, was in the employ of Brigham City, a municipal corporation of the State of Utah, as City Judge. Brigham City's Workmen's Compensation Insurance was being carried in the State Insurance Fund. Applicant was receiving a salary of $200.00 per month.

"Applicant alleged that on June 4, 1932, he sustained accidental injury arising out of or in the course of his employment while jacking up one wheel of his automobile to repair a punctured tire, and that as a result of said accident his left leg, ankle and toes, and arteries, veins and nerves were injured, and disability followed with loss of bodily function. He gave his age as 65 years.

"Applicant was treated by Dr. W. R. Merrill of Brigham City, Dr. Dumke and Dr. George Fister of Ogden, Utah, Dr. Baldwin of Salt Lake City, and by doctors at the Mayo Clinic at Rochester, Minnesota, and several other doctors also saw him between the day of the alleged accident and the hearings of the case. He was hospitalized at the Cooley Hospital in Brigham City, and Dee Hospital in Ogden and the Mayo Clinic in Minnesota. During said period he performed his duties as City Judge of Brigham City at times when he was not confined, and he was paid his full salary during all of said period.

On or about May 24, 1934, his right leg was amputated at the Dee Hospital by Dr. Dumke, at the juncture of the lower third with the upper two thirds. The pathological examination of this leg showed aneurism of the right popliteal artery with thrombosis. About July 1, 1934, at the same hospital, the achilles tendon in applicant's left leg was lengthened by a tenotomy performed by Dr. Baldwin.

"The Commission finds that applicant's disability was not caused nor contributed to by an accident arising out of or in the course of his employment.

"In view of the foregoing facts the Commission concludes that compensation should be denied.

"Wherefore, it is ordered, that compensation be and the same is hereby denied."

Plaintiff attacks the order denying him compensation upon various grounds, the principal one being that the evidence offered and received before the commission was such as to entitle him as a matter of law to an award. At the commencement of the hearing before the Industrial Commission it was admitted that at the time of the alleged injury plaintiff was in the employ of Brigham City as the city judge thereof and that the city carried insurance with the State Insurance Fund. It was not admitted that the injury complained of was sustained by plaintiff as the result of an injury received while in the course of his employment with the city.

Plaintiff, in substance, testified that as city judge he was frequently required to hold court not only in Brigham City but throughout Box Elder county; that in order to attend to his official business it was necessary for him to, and that he did, own and operate an automobile; that on the afternoon of June 4, 1932, he began to set the civil and criminal calendar for his court; that before completing the work of setting the calendar he found it necessary to go to the post office to get his mail because he expected some communications with respect to the placing of certain cases upon the calendar; that his automobile was parked near the courthouse and he concluded to use it to go to the post office for his mail and that while on his way to the post office

for that purpose he discovered the tire on the left rear wheel of his automobile was flat; that in order to change tires he jacked up the wheel and that, when it was raised about as high as it could be, the jack broke and the automobile fell back down, injuring his foot, ankle, and calf of his left leg; that his right leg also was slightly injured. The evidence of plaintiff as to how, and the place where, he received his injury, is without corroboration. That he did receive an injury to his left foot and leg on the day in question is conclusively established by the evidence. The evidence also shows without any substantial conflict that prior to the time he was injured plaintiff was in good health and was not suffering from any physical disability. After the alleged accident, plaintiff was taken to his home and put to bed. Drs. W. R. Merrill and Jay M. Schaffer attended him at his home. In an affidavit attached to plaintiff's petition for a rehearing Dr. Schaffer thus described his injury:

"That after his accident on June 4, 1932, I examined him and to the best of my recollection he was suffering from severe contusion of his left foot—ankle and leg—and that a diagnosis of fracture of bones of foot was made with dislocation of bones of foot—that there was loss of motion in the toe adjacent to the great toe—later the bones of this toe slought out— His condition in spite of treatment became progressive worse with following marked impairment of the circulation of this member, later this impairment spread to the opposite side with complete occlusion of the circulation with resultant gangrene necessitating amputation of this member."

Dr. Merrill testified that, when he treated plaintiff immediately after the accident, "his leg was markedly swollen and there was evidence along the leg he had had some kind of injury," that Mr. Jones made no complaint of injury to his right leg, and that he (Dr. Merrill) did not observe any injury thereto.

Plaintiff remained at his home a few days and was then removed to the hospital. From the time he received the injury complained of and until after his right leg was ampu-

tated on about May 4, 1934, and the Achilles tendon on his left leg was lengthened by an operation performed on or about July 1, 1934, plaintiff received almost constant medical treatment and hospitalization. Under our industrial or Workmen's Compensation Act, an employee who is injured by an accident arising out of or in the course of his employment is entitled to compensation for medical attention and hospitalization occasioned by an injury so sustained. R. S. Utah 1933, § 42-1-75. Thus, notwithstanding the salary of plaintiff was paid by Brigham City during the time he was disabled, still the defendants were not relieved from liability to pay a reasonable sum for medical, nursing, and hospital service, and for medicines made necessary by the accident, if the accidental injury was sustained in the course of his employment by the city. In such case he would be entitled also to compensation for the permanent loss of bodily function caused by the injury. There is no room to doubt that plaintiff received an injury on June 4, 1932. The evidence is likewise clearly conclusive that the injury so sustained by plaintiff required that he be given medical attention for the treatment thereof. There is considerable medical testimony in the record before us touching the question of whether the operations which plaintiff was compelled to undergo in 1934 were made necessary by the injury which he sustained in 1932. As the order under review must be annulled for reasons presently to be stated, we regard it as not necessary to review the evidence on that phase of the case in the present opinion. We especially deem it inadvisable to discuss at this time the question of whether or not the evidence is such as to require an award of compensation as and for permanent loss of bodily function, because it appears from the petition for a rehearing filed before the commission that there will be more evidence offered touching that phase of the case when the cause is again heard before the commission. Moreover, if it shall finally be determined that plaintiff did not receive the injury complained of while in the course of his employment,

then, and in such case, he would not be entitled to compensation even though he has sustained permanent loss of bodily function as the result of the accident.

Upon the record before us it is of controlling importance to determine, if possible, what the commission meant when it found "that applicant's disability was not caused nor contributed to by an accident arising out of or in the course of his employment." Certain it is that the finding just quoted is not susceptible of the construction that the accident in question did not make it necessary for plaintiff to expend money for medical treatment and hospitalization because of the injury which he received on June 4, 1932. As heretofore indicated in this opinion, if such a finding were made, it could not be successfully maintained. It is argued in the brief filed on behalf of defendants that in the finding just quoted the Industrial Commission found either "(a) applicant suffered no accident arising out of or in the course of his employment, or (b) if he did suffer such accident his disability was not the result of such accident." We are in accord with the foregoing construction placed on the finding, but we are in a dilemma in attempting to determine which of the two probabilities was the basis for denying plaintiff an award. If the injury which he sustained on June 4, 1932 was not sustained in the course of his employment and such finding may be said to be justified under the evidence, then the order denying compensation should be affirmed; otherwise, as heretofore indicated in this opinion, if he received the injury complained of while in the course of his employment, he is entitled to compensation for money he was compelled to expend for medical and hospital treatment occasioned by the injury, even though it be found that his present disability was not caused nor contributed to by the accidental injury.

The commission is not required to make written findings of fact, although it is desirable that it do so. *Denver & R. G. W. R. System* v. *Industrial Commission*, 66 Utah 494, 243

P. 800, 803; *Moray* v. *Industrial Commission*, 58 Utah 404, 199 P. 1023; *Bingham Mines Co.* v. *Allsop*, 59 Utah 306, 203 P. 644. When written findings are made, it becomes the duty of this court, when requested by one of the parties to the proceedings, to examine the findings so made and determine whether they do or do not support the order made. R. S. Utah 1933, § 42-1-78. This is a duty which can be performed intelligently only when the findings dispose of the issues raised by the evidence. What was said in the prevailing opinion in the case of *American Smelting & Ref. Co.* v. *Industrial Commission*, 79 Utah 302, 10 P. (2d) 918, 920, is applicable here. It is there said:

"Where there are written findings of fact, and the claim is made that such findings do not support the award or judgment, it becomes necessary for a reviewing court to examine into the findings in the light of the issues to ascertain whether the award or judgment is supported by the facts as found. A reviewing court may not well apply one rule for testing the sufficiency or insufficiency of the findings to support an award made by the Industrial Commission and a different rule when dealing with a judgment rendered by a court. There is nothing in the Workmen's Compensation Act which indicates that a different rule should be applied in testing the sufficiency of the findings to support an award than in testing the sufficiency of the findings to support a judgment. The reasons upon which the rule is founded are present alike in both cases. The fact that the commission is not required to make written findings does not justify the conclusion that, when written findings are made, they shall not be treated according to approved rules. * * * The commission having made findings of fact, it must be assumed that it found on all the facts that it deemed necessary to its decision. Otherwise the facts found could serve no useful purpose. When the commission undertakes to make findings, it should find upon all of the material issues, otherwise a reviewing court is powerless to determine whether the award should be affirmed or annulled."

We cannot properly dispose of the case in hand upon its merits until we determine whether or not plaintiff received the injury complained of in the course of his employment; that is, while he was on his way to the post office to get his official mail. For the reasons heretofore indicated in this

opinion, if he did so receive his injury, the order under review is clearly wrong. We express no opinion as to what the findings should be with respect to whether or not plaintiff was in the course of his employment when he was injured. Upon that issue there may be additional evidence which would render meaningless anything we might say with respect thereto. According to the testimony of plaintiff, two persons were at the scene of the accident at the time it occurred, or soon thereafter. Such witnesses may be available upon a further hearing and give additional testimony touching the question of whether or not plaintiff was in the course of his employment when he was injured.

For the reasons stated, the order denying compensation to plaintiff is annulled. Costs to plaintiff.

FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.

WOLFE, Justice (concurring).

I concur on the strength of the case of *American Smelting and Ref. Co.* v. *Industrial Commission,* referred to in the prevailing opinion, and because our decision simply sends the matter down for further hearing. But I admit I have difficulty in seeing where we are worse off with these findings than if there were no findings. If the findings were contrary to the decision of the commission, or they did not support it, it would reveal an inconsistency in the mental processes of the commission and justice would require an overturning of its decision. But in this case the final outcome or decision of the commission is supported by the findings, albeit such findings are indefinite in the sense that it is apparently impossible to determine whether the commission found that the accident, however it was caused did not arise out of or in the course of the employment, or the loss of the right leg was not the result of such accident. But if there were no findings, but just a denial of the claim, what would we do? We would assume that the commission,

knowing its duty, would have given an award for hospital and medical expenses for the injury to the left leg and all consequences therefrom if it had determined that the accident which caused such injury to the left leg arose out of or in the course of the employment and that, since it denied the award, it must definitely have determined that the very accident itself did not so happen. I wonder why, with this general finding that "the disability was not caused nor contributed to by an accident arising out of or in the course of his employment," we should come to any different deduction. But because I agree that it is more satisfactory to know definitely without deducing on what particular ground the claim in toto was denied and thus prevent possible injustice, and because it simply opens up the matter for further hearing and more definite findings, I concur.