# SALT LAKE CITY v. INDUSTRIAL COMMISSION et al.

No. 6462.   Decided May 3, 1943.   (137 P. 2d 364.)

582

Rehearing denied July 28, 1943.

*Gerald Irvine, E. R. Christensen,* and *A. Pratt Kesler,* all of Salt Lake City, for plaintiff.

*Grover A. Giles,* Atty. Gen., and *Harold E. Wallace* and *C. E. Henderson,* both of Salt Lake City, for defendants.

WOLFE, Chief Justice.

On September 17, 1941, Edren Erickson filed a claim with the Industrial Commission in which he alleged that he was injured on August 26, 1941, while employed as a truck helper by Salt Lake City Department of Streets and Public Improvement. He further alleged that the injury arose out of

or in the course of this employment. The Commission made an award to Erickson and Salt Lake City appealed.

The employment by the city and the injury while at the place of his employment are admitted by the city. The only question raised by the appeal is: Did the injury arise out of or in the course of the employment? There is considerable conflict in the evidence relating to this issue.

Erickson testified that while he was working at the city garbage dump, L. T. Landram, a fellow employee and Erickson's immediate supervisor, remarked that he would like to have some of a load of screens that were being unloaded on the dump. Landren stated that he wanted the screens for his own personal use. Erickson asked "Shall I get some for you?" and Landren replied, "Yes." The applicant testified that he proceeded to the place where the screens had been dumped, picked up an armful and started to return to the truck on which he worked. At that time, Ames the assistant foreman in charge of the dump, objected to the taking of the screens. The applicant testified that Ames called him some disreputable name and a scuffle ensued. During the scuffle the applicant suffered a broken leg. According to the testimony of the applicant the altercation arose because of a dispute over the ownership of the screens. He testified that Ames stated "Those are mine."

On the other hand, Ames denied that he had any personal interest in the screens. He stated that rules had been posted and all employees, including the applicant, had been informed orally that they were not to take any salvage from the dump without the permission of the foreman or assistant foreman. Ames maintained that his only interest was the enforcement of this rule. Dyer, the general foreman, corroborated the testimony of Ames in regard to the fact that there were such established rules.

The applicant testified that he did not know of any rules which prohibited the taking of materials from the dump. He also testified that the foreman, Dyer, had given him permission to salvage any materials which were not taken by the

salvage crew. It should, however, be noted at this point that the applicant was informed by the general foreman that he could take materials only after the salvage crew, which worked a night shift, had a chance to take what they wanted. He knew that these screens had just been brought to the dump and that the salvage crew had had no opportunity to take them.

The Commission found that Ames was the aggressor and that the altercation ensued when Ames, in his capacity of assistant foreman, attempted to enforce the rule. The Commission also made the following finding:

"The testimony of Ernest F. Ames [assistant foreman] and particularly that of Gus Dyer, foreman in charge of the city dump, is to the effect that rules had been posted and all employees had been informed by word of mouth that they were not to take any salvage from the dump without permission from the foreman or assistant foreman. Mr. Ames further testified that he had no interest in the screens and did not claim they belonged to him, but merely tried to enforce the rules regarding the taking of salvage. * * * We are incline to believe the testimony of Mr. Dyer the foreman and Mr. Ames the assistant foreman with respect to the established rules and testimony of Mr. Ames that he was attempting to enforce one of the rules at the time the scuffle ensued. * * * It is quite apparent that Ames approached Erickson with the intent to force him to drop the screens."

This quoted so-called finding is more a narration of testimony than a finding but we must assume that when the Commission set out certain testimony it intended to find the fact in accordance with such testimony. But in the face of this assumption the finding is open to only two interpretations, under either of which the case must be reversed. First, it may be construed as a finding that Erickson had knowledge of the rule and was acting in willful violation of it. A finding that rules had been posted and that "all employees had been informed by word of mouth" appears to include a finding that Erickson had been so informed. The applicant contends that it makes no difference whether or not he knew he was violating the rule. In support of this contention he first relies on the fact that

he violated the rule while complying with the request of his immediate superior. However, it appears that he knew that his immediate superior, Landram, wanted the screens for his own personal use and that it would in no way benefit the employer, the city. If we assume that he knew of the rule, he would be charged with notice that it was outside the scope of Landram's authority as supervisor to request him to violate it. Under these circumstances he is in no better position for having acted at Landram's request than he would have been had he acted entirely on his own behalf. See *Ballman* v. *D'Arcy Spring Co.*, 221 Mich. 582, 192 N. W. 596; *Pearce* v. *Industrial Comm.*, 299 Ill. 161, 132 N. E. 440, 18 A. L. R. 523, both of which involved injuries while the applicant was on an errand for his supervisor.

The applicant also relies on the holding in regard to rule breaking announced by this court in *Twin Peaks Canning Co.* v. *Industrial Comm.*, 57 Utah 589, 196 P. 853, 20 A. L. R. 872. This court did state in that opinion that the breaking of the rule in that case went only to the question of negligence, and, since negligence is no bar in compensation cases, allowed recovery. It is true that the breaking of a rule under certain circumstances might relate only to the question of negligence or willful misconduct. See *A. L. Randall Co.* v. *Industrial Comm.*, 305 Ill. 558, 137 N. E. 435 (employee instructed to take materials to another floor but ordered to wait for the elevator operator was injured while operating elevator himself); *Nordyke & Marmon Co.* v. *Swift*, 71 Ind. App. 176, 123 N. E. 449 (employee instructed to use dirty gasoline to wash floors was injured while trying to get clean gasoline); *Blocton, Cahaba Coal Co.* v. *Campbell*, 219 Ala. 529, 122 So. 806.

However, the breaking of a rule might also go to the question of whether or not the employee by his conduct departed from the course of his employment. As stated in *Erdberg* v. *United Textile Print Works*, 216 App. Div. 574, 216 N. Y. S. 275, 276:

"The disobedience of an order may do no more than to establish a fault on the part of an injured employee. In that case the employee would not lose his right to compensation. The order, however, may go further. It may so restrict the activities of the employee that its violation would place him outside the sphere of his employment [if he is injured], in which case compensation would not be payable.  *  *  * [The employee] is beyond the sphere of his employment if he is injured in the course of doing the thing forbidden." See also *Ballman* v. *D'Arcy Spring Co.*, supra.

There are a number of cases which deny recovery even where the employee who violates the rule is attempting to perform a service for the benefit of his employer at the time of the injury. *Kubes* v. *Hillman Coal & Coke Co.*, 96 Pa. Super. 340, *Kitchen* v. *Hartranft*, 130 Pa. Super. 459, 198 A. 479; *Enfield* v. *Certain-Teed Products Co.*, 211 Iowa 1004, 233 N. W. 141; *Hibberd* v. *Hughey*, 110 Neb. 744, 194 N. W. 859; *Fournier's Case*, 120 Me. 236, 113 A. 270, 23 A. L. R. 1156. It is not, however, necessary to go so far in this case. If we construe the above-quoted finding as a finding that the applicant did have knowledge of the rule, then it would appear that he acted willfully in violation of it; that he violated it for reasons tantamount to being personal to himself; and that he engaged in an altercation while persisting in the violation of it. Under these circumstances there would have been a departure and the fact that the scuffle resulted over Ames' admonition that the applicant was to obey the rule would not make the altercation arise out of nor bring the applicant back into the course of his employment. Certainly if an employee during his tour of employment left his job and proceeded to use one of the company's machines for doing a substantial job of his own, I do not think we would say that he could recover if he were injured by the machine during such departure. A fortiori, if there were a distinct rule against employees using company machines during hours of their employment for their own purposes, we would not hold that compensation should be granted. How then could such an employee be said to be returned to his employment if he

engages in an altercation with the foreman arising out of the admonishment by the latter during the time of and in reference to his departure for his own purposes? Hence if said finding is to be interpreted then the case must be reversed because of the misapplication of the law.

If, on the other hand, the applicant had no knowledge of the rule, there would not have been a departure prior to the fight and the award of the Commission could be affirmed. The Commission found that the scuffle had its genesis in the attempt of Ames to enforce the rule governing the employment and therefore it was not entirely divorced from the employment. The fight occurred at the place of the employment and during the working hours. The applicant did not leave the premises. If he had no knowledge of the rule, he, under the holding of *Twin Peaks Canning Co.* v. *Industrial Comm.*, supra, could have gone to get the screens even though he had gone there for reasons tantamount to being personal to himself. Ames was found to be the aggressor. If the applicant had not departed from his employment up to that time, he would not be held under such circumstances to have departed from his employment by engaging in the altercation. *Hartford Accident & Indemnity Co.* v. *Cardillo,* 72 App. D. C. 52, 112 F. 2d 11. However, we cannot assume that the applicant had no knowledge of the rule especially in the light of the strong inference that he had such knowledge which arises from the findings made.

As already indicated, the finding quoted above is subject to a second interpretation. That is, it may be construed as relating only to the question of the origin of the fight. If this interpretation is accepted, then there is no finding on the vital issue as to whether or not the applicant was acting in willful violation of the rule for there is no specific finding that he had the permission of foreman or assistant foreman to take the screens. Under such an interpretation the case must be reversed for we cannot assume that the Commission, if it had made a finding on this issue, would have resolved the conflict in favor of the applicant.

In this regard it is well to note that the case has two aspects—the first, involving the question as to whether the applicant departed from the employment prior to the time of the scuffle, and the second involving the question as to whether he departed by engaging in the scuffle. The record, when taken as a whole, indicates that the Commission did not consider the first aspect of the case, that is, whether the breaking of the rule by the applicant for reasons tantamount to being personal to himself itself constituted a departure. There would, therefore, be no logical or reasonable basis for assuming that the Commission would have found either one way or the other on the conflicting evidence relating to the applicant's knowledge of the rule, or, if he had knowledge of the rule, that its effect had been suspended by permission given to take the screens.

For the purpose of ascertaining who started the fight, we must assume that the Commission stated that it believed the testimony of Ames and Dyer in regards to imparting notice to all employees of the established rules. In the face of this finding it would be unreasonable for us to assume that the Commission would have disbelieved the testimony of Ames and Dyer to the effect that they had informed the applicant of the rule. And the findings are blind as to whether applicant, although he may have known the rules, disregarded them without permission.

The case of *Jones* v. *Industrial Comm.*, 90 Utah 121, 61 P. 2d 10, 13, presented a somewhat similar problem. In that case the Commission made a finding which was open to two interpretations. Under it the court could not ascertain whether the Commission intended to find that the applicant suffered no accident arising out of or in the course of his employment or whether it found that if he did suffer such accident, his disability was not the result of such accident. We stated:

"We are in a dilemma in attempting to determine which of the two probabilities was the basis for denying plaintiff an award. If the injury which he sustained on June 4, 1932, was not sustained in the

course of his employment and such finding may be said to be justified under the evidence, then the order denying compensation should be affirmed; otherwise, as heretofore indicated in this opinion, if he received the injury complained of while in the course of his employment, he is entitled to compensation for money he was compelled to spend for medical and hospital treatment occasioned by the injury, even though it be found that his present disability·was not caused or contributed to by the accidental injury."

We reversed the order of the Commission which denied compensation to the plaintiff stating that we could not dispose of the case on its merits until the finding involved had been clarified.

The situation regarding a missing finding in this case is also similar to the situation thought by the writer of this opinion to be involved in the case of *Building Service Employees* v. *New House Realty,* 97 Utah 562, 95 P. 2d 507, and the discussion of which can be found in the dissenting opinion in that case.

However, the writer does not wish to approve the language of the Jones case in so far as it indicated that this court could not in any case supply a missing finding in an industrial compensation case when the findings made by the Industrial Commission are incomplete and the evidence is in conflict. The comparison in the Jones case of an appeal from an Industrial Commission award or order, on the one hand, with an appeal from the judgment of a lower court, on the other hand, is hardly apt. The Commission is not required in any case to make written findings although it is desirable that it do so. *Denver & R. G. W. R.* v. *Industrial Comm.,* 66 Utah 494, 243 P. 800; *Moray* v. *Industrial Comm.,* 58 Utah 404, 199 P. 1023; *Jones* v. *Industrial Comm.,* supra. If no findings were made we could supply them all. In some cases the findings of the Commission fit into place like the pieces of a jig-saw puzzle forming a pattern which gives a more or less complete picture of those matters considered and the conflicts resolved by the Commission even though certain findings are omitted. The mosaic thus formed is such that it clearly indicates

which way the Commission would have held on the conflicting evidence had it not neglected to make a finding. Under these circumstances there seems to be no logical reason why the court, which could supply all the findings if none were made, could not supply the missing finding. But such is not the case here.

For the reasons stated above, the award of the Commission must be and is hereby reversed.

McDONOUGH, J., and WM. L. HOYT, District Judge, concur.

LARSON, Justice.

I dissent. I think there are two errors in the prevailing opinion. The first is with respect to the findings of the commission. I doubt that what the commission put in the record in its decision can be called, or was intended to be, findings at all. It consists of a summation of the evidence as the commission interpreted its meaning, that is the rationale of the commission on the evidence, so the parties and any one interested can understand how the commission arrived at its decision. It is merely scenery sketching—that is, word painting the scene as it appeared to the commission. And I think this furnished a better ground for understanding the decision than would formal finding.

We have held that the commission need not make any findings. That in the absence of findings we will presume that had they been made, they would have been such as to support the decision; that it cannot be assumed the commission would have entered a decision contrary to what they believed the facts to justify. *Denver & R. G. W. R.* v. *Industrial Comm.*, 66 Utah 494, 243 P. 800; *Moray* v. *Industrial Comm.*, 58 Utah 404, 199 P. 1023; *Jones* v. *Industrial Comm.*, 90 Utah 121, 61 P. 2d 10; *Amer. Smelting & Ref. Co.* v. *Industrial Comm.*, 79 Utah 302, 10 P. 2d 918.

If, therefore, we view the statement of the commission as in effect an effort to state findings of fact, why should we

assume a construction of them that would not support, but would upset the decision and award made? The opinion says,

"we cannot assume that the Commission, if it had made a finding on this issue, would have resolved the conflict in favor of the appli-cant."

Yet that is exactly the assumption we make in every case where there are no findings. The opinion also states that the purported finding is open to two interpretations, and argues that under either of them, the award must be annulled. The writer thinks that under one interpretation the award should be affirmed. Our duty then is clear—to adopt the construction that will sustain the order of the commis-sion. If under any reasonable construction of the evidence, [or the findings] the order of the commission can be upheld, it is our duty to uphold it. *Continental Casualty Co.* v. *Industrial Comm.*, 75 Utah 220, 284 P. 313; *Tintic Standard Min. Co.* v. *Industrial Comm.*, 100 Utah 96, 110 P. 2d 367; doctrine applied without comment by the court in *Russell* v. *Industrial Comm.*, 86 Utah 306, 43 P. 2d 1069, and *Pace* v. *Industrial Comm.*, 87 Utah 6, 47 P. 2d 1050.

The other point of difference is as to whether applicant had departed from the course of his employment. The opinion seems to hold that if applicant knew of the rule that things could not be salvaged from the dump, he would have departed from his employment at the time of the altercation with Ames. It is interesting to note that applicant was not the one who made the proofs as to the cause of the fracas. That proof was deliberately put in by the employer, to establish the fact—which applicant did not then contradict —that the row and fight arose over an effort on the part of Ames to enforce a rule of the work, a rule governing the conduct of the employees while at, and about, their work. If the fight arose in enforcing a rule governing the actions of an employee in the doing or performing of his employment, how can it be said the employee was not in employ-

ment, or in the course thereof at such time? Had the commission found, or had the city contended, or did the opinion argue that this fight was a personal affair, a grudge fight, unrelated to what the men were doing, or the manner in which they were doing their work, that would be a horse of a different color. But where a fight ensues between a foreman and an employee, at the place of work, because the foreman is trying to make the employee conform to certain rules as to what he may do, and how he shall do it, there is just no escape from the fact that the man was in employment at the time. The commission so indicated, their decision in effect so declares, and there is evidence to sustain it. I therefore dissent.

MOFFAT, Justice (dissenting).

Edren D. Erickson was in the employ of Salt Lake City as a truck helper in the Department of Streets and Public Improvements. He alleged that he sustained an injury arising out of or in the course of his employment by being struck by a city employee at the city garbage dump, causing him to fall on and break his leg.

From the evidence, the Industrial Commission, in substance, found the following: On August 26, 1941, while working at the garbage dump, and in response to the request of a fellow employee, L. T. Landram, the applicant proceeded to the edge of the dump where a number of screens were lying. Landram was the driver of a truck and Erickson was his helper. Landram said to Erickson that he would like to have some of a load of screens that were being dumped to screen paint for his own use, to which Erickson replied, "Shall I get some for you?" Landram said, "Yes." Erickson had gone to where the screens had been dumped at the edge of the dump, had picked up an armful of the screens and started to walk back to the truck.

At that time, Mr. Ames, assistant foreman, ordered Erickson to drop the screens. The two men engaged in a scuffle. The testimony is in conflict as to just what occurred. Erick-

son said Ames struck him first. This, Ames denies. During the scuffle both fell to the ground. Erickson's left leg was fractured at the ankle by the fall.

The testimony of Gus Dyer, foreman, and Ames, assistant foreman, is to the effect that rules had been posted and all employees informed orally that they were not to take any salvage from the dump without permission of the foreman or assistant foreman, and that certain shift men were entitled to take salvage as part of their pay. The applicant testified that he did not know of any rule which prohibited his taking materials from this dump. He stated he talked with the foreman some time before and was told that the salvage crew should have first chance at any salvage, but that he could take any materials not taken by them. Ames said he had no interest in the screens and did not claim they belonged to him, but merely tried to enforce the rules.

The Commission further suggests in the findings that

"had the scuffle been a result of dispute over the ownership of the screens we would be inclined to find the injury did not arise out of or in the course of employment * * * It is quite apparent that Ames approached Erickson with the intent to force him to drop the screens. * * * It seems to us that both participants were at fault, but resolving doubt in favor of applicant, we find that the injury arose out of and in the course of his employment and that he is entitled to an award."

There are sufficient facts presented to the Industrial Commission to support the conclusions reached. Put in another form, the employment must be and is recognized. Removing salvage from the dump was a part of the employer's activity as well as leveling and providing accessible means for dump or waste. The matter making the questions a close one, and upon which the Commission expressed doubt, is: Had Erickson departed from his employment upon an errand of his own?

The evidence is clear that he was not upon an errand in which he had any personal interest when he went for and was returning to the truck with some screens, at the re-

quest of the driver of the truck, his immediate superior, and whose helper he was. Under our statute, an applicant need show only that the injury arose out of or in the course of his employment. Sec. 42-1-43, R. S. U. 1933. In the case of *Salt Lake County* v. *Industrial Commission et al.*, 101 Utah 167, 120 P. 2d 321, at p. 323, the following statement is made:

"We have many times affirmed the principle that it is not our duty to say what inference or conclusion we would have drawn from facts presented to the Commission. *Kent* v. *Industrial Comm.*, 89 Utah 381, 57 P. 2d 724; *Utah-Idaho Central R. Co.* v. *Industrial Commission*, 71 Utah 490, 267 P. 785; *Continental Casualty Company* v. *Industrial Commission*, 75 Utah 220, 284 P. 313. 'Our duty is to examine the record and, unless we can say that as a matter of law the conclusion of the Commission on the question of "course of employment" was wrong because only the opposite conclusion could be drawn from these facts, to affirm.' *Wherritt* v. *Industrial Commission*, [100 Utah 68], 110 P. 2d 374, 376."

The injury occurred during the hours applicant was on duty and at the place his work required him to be. He was waiting for orders when his immediate superior asked him to get some of the screens. There was such relationship between the two employees that it would be unusual if either asked the other to do what was done, that the other would refuse. The position of the prevailing opinion destroys harmony and co-operation of employees and impairs efficiency.

We need not discuss the facts of the scuffle. The evidence as to who was the aggressors in direct conflict, but the Commission resolved the doubt in favor of applicant and found that Ames, in his capacity as assistant foreman and in an attempt to enforce the rule, was the aggressor, but both were at fault. In my opinion, the momentary digression, if such there were, does not constitute a departure from the employment and does not justify our overturning the conclusion of the Commission.

I think the award of the Commission should be affirmed.

PRATT, J., on leave of absence.