## BUHLER v. MADDISON.

No. 6822.   Decided February 13, 1946.   (166 P. 2d 205.)

246

See 1 C. J. S., Action, sec. 2; 28 R. C. L., 761.

*A. H. Hougaard* and *Herbert Van Dam,* both of Salt Lake City, for appellant.

*Delbert M. Draper* and *Clyde & Coray,* all of Salt Lake City, for respondent.

LARSON, Chief Justice.

An action for damages sustained as result of a dynamite blast while working on a mining claim in Nevada. This appeal presents for our determination the following matters: (1) The nature of the relationship between appellant and respondent. (2) The legal effect of the presumption of negligence and proximate cause under the Nevada statute. (3) Did the court err in taking the question of negligence from the jury and submitting only the question of damages? Or in other words, did defendant produce evidence enough as to freedom from negligence as to be entitled to go to the jury on the question as to whether he had rebutted the presumption of negligence and probable cause? (4) Did the accident arise out of and in the course of employment? (5) Was respondent guilty of such wilful negligence as to preclude recovery under the Nevada Compensation Act?

Plaintiff suffered personal injuries while working on the Lone Pine Lode mining claims near Elko, Nevada. Defendant and one Grant (both residents of Salt Lake City, Utah) were joint owners of these claims. They had failed to cover their employees with workmen's compensation insurance under either the Utah or the Nevada act. On July 2, 1944, plaintiff and his helper, the only two employees, placed a charge of dynamite in a drilled hole in the tunnel, to which was attached a primer—a piece of

fuse about 14 inches in length with a cap attached. He lighted the fuse and with his helper retired to a safe place where he waited five to eight minutes. Hearing no explosion he believed the fuse had stopped burning before reaching the cap. As he neared the place of the charge to make a new primer, the charge exploded resulting in the injuries forming the basis of this action. The cause was before this court on a former appeal reported in 105 Utah 39, 140 P. 2d 933, where there is a more complete statement of the facts. Hereafter we shall refer to the evidence only as it becomes of consequence in disposing of the questions presented on this appeal.

The action was based upon defendant's negligence. As pointed out in the opinion on the former appeal, plaintiff could not recover under the common law doctrine of negligence. In the trial, plaintiff without objections from defendant, had put in evidence certain provisions of the Nevada Workmen's Compensation Laws, although he had not pleaded them. We there held that plaintiff's verdict could not be upheld under the Utah Compensation Laws because the evidence did not justify a finding that defendant had three or more employees, as required by the Utah laws to bring the defendant within their provisions. Because the provisions of the Nevada Workmen's Compensation act defining employers were not pleaded or introduced in evidence, this court declined to pass on the question of whether respondent was an "employee", and appellant an "employer" under the meaning and terms of that act. It is conceded that neither appellant nor Grant complied with the provisions of the Nevada act by securing compensation, so that if they were within the term "employers" as defined therein, the penalties provided thereby against non-complying employers would be applicable against them. Upon remittitur, appellant filed an amended complaint wherein he set out the provisions of the Nevada Compensation act; Nevada Stats. 1913, Chap. 111, as amended by Nevada Stats. 1919, Chap. 176, Nevada Stats. 1925, Chap. 114, as follows:

"Section 7½. The term 'employer,' as used in this act, shall be construed to mean: The state, and each county, city and county, city, school district and all public corporations and quasi-public corporations therein, and every person, firm, voluntary association, and private corporation, including any public-service corporation, which has *any person* in service under any appointment or contract of hire or apprenticeship, express or implied, oral or written, and the legal representative of any, deceased employer.

"Sec. 7½ (a). The term 'employee,' as used in this act, shall be construed to mean: Every person in the service of an employer, as defined in section 7½, under any appointment or contract of hire or apprenticeship, expressed or implied, oral or written, including aliens, and also including minors, whether lawfully or unlawfully employed, * * *." (Italics added.)

The fact that appellant did not have three persons in his employ, one of our grounds for holding before that no recovery could be allowed under the Utah act, has no application under the Nevada statute. The question now is "did appellant have *any* employees"? If so, appellant is a non-complying employer under the Nevada Compensation Act, and the sections referring to such employers apply against him.

Both parties agree that the elements which go to show the existence of an employer-employee relationship, as they have been set out by this court in *Weber County et al.* v. *Industrial Comm.*, 93 Utah 85, 71 P. 2d 177, and *Murray* v. *Wasatch Grading Co.*, 73 Utah 430, 274 P. 940, correctly state the law. The elements as there outlined, are as follows [93 Utah 85, 71 P. 2d 181]:

"(1)  exercise of control over the details of the work,
"(2)  payment of compensation,
"(3)  power of appointment,
"(4)  power of dismissal, and
"(5)  for whose benefit the given work was done."

There is no substantial conflict in the evidence. We are asked to determine whether as a matter of law the evidence presented shows the employer-employee relationship. With-

out going into a detailed review of the evidence suffice it to say that such relationship is clearly shown by the evidence. We conclude therefore, that respondent was an employee of appellant. The appellant was therefore an "employer" as that term is defined in the Nevada Compensation act. Since he did not accept that act by securing insurance, the provisions relating to non-accepting employers may be applied against him herein.

These provisions are to the effect that the employer failing to comply with the provisions as to insurance may not escape liability for injury sustained by his employee which "arises out of and in the usual course of employment," because:

"(3) That the employee was guilty of contributory negligence, unless and except it shall appear that such negligence was willful and with intent to cause the injury, or the result of intoxication on the part of the injured party;

"(4) In actions by an employee against an employer for personal injuries sustained, arising out of and in the course of the employment where the employer has rejected the provisions of this act, it shall be presumed the injury to the employee was the first result, and growing out of the negligence of the employer, and that such negligence was the proximate cause of the injury; and in such case the burden of proof shall rest upon the employer to rebut the presumption of negligence." Para. 2680, Sec. 1(b), Nevada Comp. L. 1931-41.

The question first arises as to the effect and operation of the presumption of negligence and probable cause established by subparagraph (4). Appellant's position is that such presumption shifts only the burden of going forward, and that once the employer has produced evidence to rebut the presumption of negligence, the force of the presumption is spent, and it drops out of the picture.

That is the general rule in this state as to evidentiary presumptions. *Ryan* v. *Union Pacific R. R.*, 46 Utah 530, 151 P. 71, 74; *Clark* v. *Los Angeles & S. L. R. Co.*, 73 Utah 486, 504, 275 P. 582; *State* v. *Steadman*, 70 Utah 224, 259 P. 326; *State* v. *Green*, 78 Utah 580, 6 P. 2d 177; *Chamberlain*

*et al* v. *Larsen,* 83 Utah 420, 29 P. 2d 355; *In re Newell's Estate,* 78 Utah 463, 5 P. 2d 230.

Respondent's argument is that the presumption shifts the burden of convincing the judge or jury on the issue of negligence and proximate cause—that instead of such burden being upon plaintiff as it usually is, defendant has that burden; that upon proof of the employer-employee relationship; of the injury "arising out of and in the usual course of employment"; and that the employer has not accepted the act relative to insurance, plaintiff is entitled to a judgment as a matter of law, unless the defendant shall produce evidence which convinces the trier of the fact that defendant was not negligent; that in determining such question the presumption of negligence of defendant remains as an element to be weighed with the other evidence by the trier of the fact.

Interpreting this provision, the Nevada court said in *Reeder* v. *Pincolini,* 59 Nev. 396, 94 P. 2d 1097, 1099:

"* * * aside from the presumptions arising from the statute respondent was under no duty to produce evidence showing negligence on the part of appellants, unless the evidence produced in the case rebutted the presumptions. The trial court did not say that the evidence produced by respondent, considered together with the presumptions arising from the statute, *which are evidence in his favor,* does not constitute substantial evidence supporting the judgment. * * *

"The presumptions of negligence and proximate cause arising from the statute, together with respondent's testimony, constitute substantial evidence supporting the judgment." (Italics added.)

And in *Cahow* v. *Michelas,* Nev., 149 P. 2d 233, 237, it was said:

"There was substantial evidence, *including the statutory presumptions,* to support its findings, and as it is not clear to this court that a wrong conclusion was reached, we must follow the general rule that when evidence is conflicting and there is substantial evidence to support the trial court's findings, they will not be disturbed on appeal." (Italics added.)

California statutory provisions (Stat. 1937, p. 271, Secs. 3706-3709) are substantially identical and construing them

in *Peters* v. *California Building-Loan Ass'n*, 116 Cal. App. 143, 2 P. 2d 439, 442, the court said:

"It is to be noted that the presumptions in favor of appellant are clearly specified and will stand as evidence until controverted and overcome by competent evidence. * * *"

The above authorities seem conclusive that under the Nevada practice—as also California practice under a similar statute—the presumption set up by the Nevada Workmen's Compensation Act, is evidence, and may be weighed and considered as such along with any other evidence offered by the parties. Many of the cases cited by appellant on this question are not in point because they deal with a different type of presumption than the one herein. A distinction must be drawn between what we might call the logical presumption, such as legitimacy of children born in wedlock or delivery of a deed found in the possession of the grantee; and purely legal presumptions set up by statute or decision. It is one of the latter kind with which we are here concerned. Such presumptions do not have their basis in logic; they are established for other purposes—in this case as a matter of public policy, or necessity. Sufficient reason for this presumption of negligence is to place employees of a rejecting employer more nearly upon an equal footing with those whose employer secures insurance and accepts the terms of the compensation act. When an employee covered by the act is injured, there is no question of negligence or contributory negligence—the only matter of inquiry, assuming the injury in course of employment, is the nature and extent of his disability. The legislature provided that in case an employer did not accept the act, his employees should not be placed in an unfavorable position by the failure of the employer to come within the act—that is, the questions of negligence, and contributory negligence were removed from consideration by the statutory presumption. So in that regard the employees stand on an equal footing whether their employer accepts or rejects the compensation act. The employer not complying with the com-

pensation act, must not be in a position of vantage as to his injured employees.

This action is prosecuted in the courts of Utah upon a cause of action arising in Nevada. The merits of the controversy, the elements of the cause of action, the substantive rights are determined by the law of Nevada; the trial of the action, the procedural matters including the making of proof and rules of evidence are controlled by the law of Utah.

Is the presumption of negligence and proximate cause, involved in this action, a matter of substance, a part of the cause of action, or is it a matter of procedure, a question of evidence, an element of proof? If, the former, the lex loci, the law of Nevada controls; if the latter, the lex fori, the law of Utah controls. The question is one of considerable importance because the answer disposes of a number of assignments of error relating to instructions and also to the sufficiency of the evidence. When the situation is one where a different result might be reached according to the rule applied, the court must determine under the law of Conflicts of Laws whether it will apply the rule of the foreign state as a rule of substance or apply the rule of the forum as a rule of procedure. In determining whether an element of a cause of action is a matter of substance or of procedure, the court will examine the statute or rule of law creating the claimed right or duty, and the interpretations thereof by the courts of state creating the right, or where the cause of action arose. See Restatement, Conflict of Laws, p. 701. If a requirement concerning proof of an element of a cause of action exists in the lex loci, and if such requirement is there interpreted as a condition of the cause of action itself, the court at the forum will apply the rule of the foreign state. This is so because

"the remedial and substantive portions of the foreign law are so bound together that the application of the usual procedural rules of the forum would seriously alter the effect of the operative facts under the law of the foreign state." Restatement, supra, p. 710.

Where a substantive right based upon foreign law is so inseparably connected with matters procedural in nature, that such procedural matters must be enforced in order to preserve the integrity of the substantive right, the court will apply the foreign law in determination of such matters even though procedural in nature. 15 C. J. S., Conflict of Laws, § 9, p. 877; 11 Am. Jur. p. 499; *Precourt* v. *Driscoll*, 85 N. H. 280, 157 A. 525, 78 A. L. R. 874, annotation 78 A. L. R. pp. 863-891.

There is a distinct division of authority as to whether a presumption such as is involved in this case is a matter of substance or of procedure. The earlier cases predominate in the view that the matter of presumptions as evidence is one of procedure controlled by the law of the forum. In recent times there is a decided drift on the part of courts

"to relegate to the lex loci any question, which though apparently remedial, closely affects substantive rights, or as to the character of which as substantive or remedial, there may exist a difference of opinion." See Annotation 78 A. L. R. 883.

Said the Alabama court in *Helton* v. *Alabama Midland R. Co.*, 97 Ala. 275, 12 So. 276, 285,

"There are classes of cases * * * where rules prescribed by the local law partake of the nature of evidence, and yet so attach to the act or contract as to become a part of the right or obligation itself."

Conclusive presumptions, beyond doubt, prescribe substantive rights, and are not merely rules of remedy. *Pritchard* v. *Norton*, 106 U. S. 124, 1 S. Ct. 102, 27 L. Ed. 104. Lord Justice Brett, in The Gaetono & Maria L. R. 7. Prob. Div. (Eng.) 137-CA, stated the distinction thus:

"The manner of proving the facts is matter of evidence, and to my mind, is matter of procedure; but the facts to be proved are not matters of procedure; they are matters with which procedure has to deal."

The rule is not limited to conclusive presumptions, and questions of presumptions and of burden of proof may affect the existence of the right of recovery, and therefore

should be controlled by the lex loci. See *Hartmann* v. *Louisville & N. R. Co.*, 39 Mo. App. 88; *Hiatt* v. *St. Louis-San Francisco R. Co.*, 308 Mo. 77, 271 S. W. 806; *Ramey* v. *Missouri Pac. R. Co.*, 323 Mo. 662, 21 S. W. 2d 873, certiorari denied 280 U. S. 614, 50 S. Ct. 162, 74 L. Ed. 655. Also Anno. 78 A. L. R. 888.

Is the presumption of negligence and proximate cause here involved so closely connected with the cause of action granted by the statute setting up the presumption, that to apply the rule that such presumptions are not evidence to be weighed by the trier of the facts after ▪▪ evidence as to the facts about which the presumption is indulged has been given, would seriously affect or impair the right to damages as granted by the Nevada statute? In other words, is the presumption a material part or element of the right to damages prescribed by the Nevada Act?

The statute quoted supra declares that in actions against an employer for injuries to an employee, it shall be presumed that the injury was the result, and grew out of the negligence of the employer and that such negligence was the proximate cause;

"and in such case the burden of proof shall rest upon the employer to *rebut the presumption* of negligence." (Italics added.)

As indicated supra, this presumption is set up by the statute to place the injured employee of a rejecting employer as nearly as possible on a par with the injured employee of an employer who has accepted the act, as to the establishment of his right to redress. The presumption at the point indicated in the statute is mandatory, and the court or jury can no more refuse to infer the fact or draw the conclusion than they can disregard any other rule of law; it takes the place of other evidence; it controls and dominates until it is overcome by evidence to the contrary more convincing and persuasive. It is a "rebuttable presumption" of the law; one that obtains until overthrown by proof. *Barrow* v. *Territory*, 13 Ariz. 302, 114 P. 975; *Beck* v. *Kansas City Public Serv. Co.*, Mo. App., 48 S. W.

2d 213, 215. It is a procedural assumption of a fact which is prescribed by a rule of the substantive law declaring that for procedural purposes a certain probative force shall be attached to a given state of facts, that is, a certain inference shall be drawn from it, unless and until evidence sufficient to prove the contrary has been introduced. 36 Words & Phrases, Perm. Ed., p. 429; *Meteropolitan Life v. Goodwin*, 4 Cir., 92 F. 2d 274, 276; *Simpson v. Simpson*, 162 Va. 621, 175 S. E. 320, 94 A. L. R. 909.

Note that the statute does not merely authorize an inference of negligence, but requires that such negligence be presumed until the employer *rebuts the presumption of negligence*. To rebut is to overcome to contradict, to persuade or convince to the contrary. Unless the employer carries this burden of persuasion, of convincing the jury he was not negligent, the verdict must be for the employee who has met the requirements of proof so as to invoke the presumption. Since the employer must produce sufficient evidence to overcome the presumption of negligence, of course the jury must weigh the evidence against the presumption, to determine whether it has been outweighed or overcome. The employee's right of action, as granted by the statute, is one where he has no obligation or duty of showing negligence. For the forum to impose upon him as a part of his cause of action the duty or burden of showing negligence is to require him to maintain a cause of action different from that granted him by the lex loci. It must follow therefore that the statutory presumption of negligence and proximate cause is so closely allied and interwoven with the cause of action itself that it cannot be separated therefrom without seriously impairing the integrity of the cause of action. The law of Nevada, lex loci, and not the law of Utah, lex fori, must govern on the question as to whether the jury could consider and weight the presumption of negligence, along with the other evidence on the question of defendant's negligence and proximate cause. The trial court applied the Nevada rule, which was the correct procedure.

Plaintiff grounded his cause upon negligence of the defendant in furnishing defective fuse for blasting operations. By the terms of the statute, defendant is presumed to have been negligent in this particular. The California court, construing a similar statute in *Hicks* v. *Ocean Shore R. R.*, Cal. App. 109 P. 2d 1032, said the statute presumed negligence, not only in the particulars specified in the complaint but in any other particular which might support the verdict. But in the instant case we need not go beyond the negligence specified in the amended complaint. Both plaintiff and defendant offered evidence apart from the presumption, as to why the fuse was defective, and as to how such defects could occur. There is no claim that the accident could have been caused by any act of omission or commission independent of, or apart from the fuse. It is conceded by both sides that the delayed blast was due to defects in the fuse. The only question arises as to whether the defects in the fuse were due to acts of plaintiff, or were either present when defendant bought the fuse for use by plaintiff or arose thereafter because of handling by defendant, or through his failure to provide plaintiff a safe and dry place to keep the fuse. Plaintiff testified that he received the fuse rolled in a coil, in the usual order, that it had been wet, that he had to keep it in a niche in the side of the tunnel to keep it dry, that he handled it with care, never kinked it; that a number of times there had been delayed blasts or blast that failed to shoot at all due to defects in the fuse, and that he had complained to Grant about it. As to the last statement he was corroborated by a fellow employee. On the other hand, there was evidence that the fuse was a standard grade of fuse, purchased in the coil in which it was delivered to plaintiff; that until delivered to plaintiff it had not been wet; that merely getting wet does not cause defects in such fuse; that the delayed shots which had occurred prior to the accident were not above the normal for good grades of fuse in mining operations; that the most probable cause of the delay in the explosion which caused the accident was

a break in the fuse which allows the fuse to spit out at the side which would slow up its burning rate. Breaks in the countering may occur from rough handling, kinking, or binding too sharply, or lacing the fuse, or there may be a defect in the manufacturing of the fuse. There was evidence that the fuse was in good condition when delivered to plaintiff, and that thereafter it had been in the sole and exclusive care and charge of plaintiff.

Was this evidence such that on the whole record reasonable men could have found that the fuse was not defective when delivered to the plaintiff, or that the defects in the fuse which caused the delayed shot were due to the acts of plaintiff in handling or caring for the fuse after he received it? If so, it was a question for the jury as to whether defendant had overcome or rebutted the presumption of negligence, and the court should not have taken that question from the jury. Certainly under the evidence a jury could have found that the fuse was not defective when delivered to plaintiff, and that the defect resulted from the acts of plaintiff in handling or using the fuse. While contributory negligence is no defense, such finding of facts may well to the jury negative, overcome and rebut the presumption of negligence, and result in a verdict in favor of defendant. Said the Nevada court referring to this statute in *Day* v. *Cloke,* 47 Nev. 75, 215 P. 386, 387,

"The appellant cannot be held liable in the absence of any negligence attributable to him."

Same statement occurs in *Cahow* v. *Michelas,* supra, where the court continues:

"But the burden of proof was on him to rebut the statutory presumptions. In determining whether they had been overcome, it was proper for the trial court [trier of the fact] to take into consideration all the evidence, that of defendant as well as that of plaintiff." Citing *Reeder* v. *Pincolini,* supra; *O'Brien* v. *Las Vegas & T. R. Co.,* 9 Cir. 242 F. 850; Schnieder's Workman's Compensation Text. par. 129, pp. 341, 342.

Under a similar statute, the California court in *Hicks* v. *Ocean Shore,* supra, said [109 P. 2d 1035]:

"And when the statute declares that an issuable facts shall be presumed, it in effect declares that such presumption is substantial and satisfactory evidence of the fact in issue, and, though it is permitted to rebut the presumption, thus merely *creates a conflict for the jury to determine * * *.*" (italics added.)

See also *Peters* v. *California Bldg. & Loan Assn.,* 116 Cal. App. 143, 2 P. 2d 439. In the instant case the trial court apparently made its determination on the mistaken theory that the presumption arising from the statute gave respondent an absolute right to recover, irrespective of whether the employer was negligent. Such is not the right given by the Nevada statute, and evidenced by the decisions of the Nevada court cited, supra. Since the cause was tried before a jury, the court should have submitted to the jury the question as to whether defendant had overcome or rebutted the presumption of negligence. It was therefore error for the court to direct a verdict upon the question of negligence, and leave only the question of damages to the jury.

As the case must be reversed, we shall consider other errors alleged, for the guidance of court and counsel, upon the new trial. We find no merit to appellant's contention that respondent was outside of the scope of his employment when the injury occurred. He was performing one of the operations he was hired to perform, to wit: blasting, during the regular working hours, and on the premises of the employer, at the place he had been directed to work. He was within the employment, unless as appellant argues, his disregard of the safety rules took him without. However, we have held that breaking a rule does not take the employee without the scope of his employment. *Twin Peaks Canning Co.* v. *Industrial Comm.,* 57 Utah 589, 196 P. 853, 20 A. L. R. 872; *Salt Lake City* v. *Industrial Comm.,* 103 Utah 581, 137 P. 2d 364, and we are not now inclined to reconsider those cases or make a

different determination.

Appellant next argues that because of his wilful misconduct, respondent is barred from recovery under the provisions of subsection (3) of the Nevada statute above set out. However, the provision of that section is that contributory negligence is not a defense to the employer,

"* * * unless and except it shall appear that such negligence was wilful and with intent to cause the injury, or the result of intoxication on the part of the injured party."

By the use of the conjunctive it is plain that it was the legislative intent to require presence of both wilful negligence and an intent to cause the injury before the employee might be barred. So read, the provisions are to all intents and purposes the same as Sec. 42-1-43, U. C. A. 1943. We have held that breaking of a rule did not make the injury "purposely self-inflicted" within the meaning of that section. *Twin Peaks Canning Co.* v. *Industrial Comm.*, supra; *Salt Lake City* v. *Industrial Comm.*, supra. Therefore appellant's contention in this regard must be overruled.

Lastly, we consider appellant's special demurrer for defect of parties defendant. This objection must fail on two grounds, firstly as not being properly raised, and secondly as not being timely presented to the court. It is said in 39 A. Jr. 110:

"Under the common-law practice, and in jurisdictions in which the practice is still fundamentally according to the common law, an objection to the non-joinder of parties can, as a general rule, be taken advantage of only by a plea in abatement, or by a plea or answer in the nature thereof, although there is authority to the effect that at common law if the defect appears on the face of the pleading objection may be taken advantage of by demurrer or in arrest of judgment.

"In any event, in order to raise an objection by demurrer to a claimed defect in parties, that defect must appear affirmatively in the complaint or petition itself."

This rule of procedure has been adopted in this state, *In re Thompson's Estate,* 72 Utah 17, 269 P. 103; *National*

*Union Fire Ins. Co.* v. *Denver & R. G. R. Co.,* 44 Utah 26, 137 P. 653; *Henderson* v. *Turngren,* 9 Utah 432, 35 P. 495; *Olson* v. *Dist. Ct.* 106 Utah 220, 147 P. 2d 471; *Johanson* v. *Cudahy Packing Co.,* 107 Utah 114, 152 P. 2d 98. No defect appeared from the face of the complaint herein.

This cause was tried twice before in the lower court, and the same defect, if one there be, was present then. It was not raised, and so was waived. *In re Thompson's Estate,* supra; *National Union Fire Ins. Co.* v. *Denver & R. G. R. Co.,* 44 Utah 26, 137 P. 653; *Henderson* v. *Turngren,* 9 Utah 432, 35 P. 495; *Wenner* v. *Smith,* 4 Utah 238, 9 P. 293.

The cause is accordingly reversed and remanded to the District Court for a new trial so that issues of negligence of appellant may be submitted to the jury. Costs to appellant.

McDONOUGH and TURNER, JJ., concur.

WADE, Justice (concurring in result).

I concur with the result and generally with the reasoning of Mr. Chief Justice LARSON and also with that of Mr. Justice WOLFE but in certain respects, which I will point out, my views are slightly different from both of those opinions.

In my opinion, the effect of the Nevada statute creating a presumption of negligence and proximate cause on the part of the employer is simply to shift the burden of persuading the trier of the facts, on those questions, from the employee to the employer. This I understand is the holding of both the Chief Justice and also Mr. Justice Wolfe. I am unable to understand how the trier of the facts can weigh a presumption which is not based on logic or natural inference against direct evidence to the contrary. Since such a presumption does not logically tend to prove the fact presumed it therefore can have no weight in persuading the mind of the trier of the facts. But such a presumption can greatly affect the trial by changing the

burden of proof from one party to the other. Thus with the presumption, in the absence of any direct evidence of negligence or if the evidence thereon is evenly balanced, the employee would be entitled to recover, whereas without the presumption the employer would win. In other words, with the presumption the employee would be entitled to recover unless the employer persuaded the trier of the facts that he was not negligent or that his negligence was not the proximate cause of the injury, whereas without the presumption the employee could not recover unless he persuaded the trier of the facts that the employer was guilty of negligence which proximately caused the injury.

I agree with Mr. Justice WOLFE that this presumption, which has the effect of changing the burden of proof, is substantive in its nature and not merely a rule of procedure, and therefore is binding on the courts of this state in the trial of this case. But even if we were to hold that it is a mere rule of procedure, we would not determine the effect of the presumption by the Utah cases cited by Mr. Chief Justice LARSON, but we would be compelled to hold that the presumption being merely a procedural statute of a foreign state has no application to a case tried in the courts of this state at all, and the case would have to be tried in the courts of this state under the procedural laws of this state applicable thereto the same as though no such statute on presumption in Nevada existed. Certainly under those circumstances we would not hold that the presumption created by a Nevada statute, being a rule of procedure, is binding on the courts of this state but would only have the effect which a presumption ordinarily has in the courts of this state. To my mind, we must either take the presumption created by the Nevada statute and hold that it is binding on our courts, with the interpretation placed thereon by the Nevada courts, or we must hold that it is not binding on the Utah courts and apply the appropriate Utah law which governs this type of case.

I concur with both, the opinion of CHIEF JUSTICE and Mr. Justice WOLFE, that in this case the only negligence

which should be submitted to the jury is that alleged by plaintiff in his complaint. I, however, am not sure that we can say as a matter of law, that there could be no other possible grounds of negligence other than those alleged. Such a holding would cover a lot of ground. Usually when I think I have covered every possibility some one with a greater imagination than I suggest things that are not only possible but which sound quite probable. To my knowledge no such suggestion has been made in this case. But I do feel confident that where there is evidence submitted on the question of negligence and proximate cause, the consideration of the jury should be limited to the grounds suggested by the pleadings or the proof, and that the jury should not be allowed to speculate on mere possibilities of negligence or proximate cause beyond those limits. and since there were no grounds of negligence suggested by the proof other than those alleged in the complaint it should only be submitted on those grounds. I agree with Mr. Justice WOLFE that this question is one of procedure and not substantive in its nature and therefore we should be guided by our own laws on that question rather than the laws of Nevada.

WOLFE, Justice (concurring specially).

I concur. Since my reasons for concurring vary somewhat in several places from those set forth in the court's opinion, I shall set forth sufficient of my views to note the variances. Sometimes by adhering too close to labels we create difficulties for ourselves. Substantive law as defined by Bouvier's Law Dictionary, Baldwin's Century Edition, consists of

"those rules which give recognition to rights and duties, which rules are the very foundation and substance of the law."

Adjective law according to the same authority consists of "those rules which provide remedies for infringement of rights and failure to perform duties. Those rules of procedure by which substan-

tive law is given concrete application to persons and events. They emanate from both legislatures and courts."

These definitions correspond to the jurisprudential concepts of those rights designated as primary, such as one's right to be free from the invasion of his person, and the right designated as secondary which is the right to have redress for a violation of such primary right.

I am inclined to the view that no new cause of action was created in favor of an employee whose employer rejected the act but rather that the employee was relegated to his common law action with certain defenses taken from the defendant and a presumption of negligence created in favor of the plaintiff. Hence no new right was created, but in taking away certain defenses and supplying plaintiff with a presumption not based on logical or natural inference which remains in the case to go to the jury along with rebuttal testimony in place of proof required, a right substantive in nature was created. This right may be looked upon as more than remedial, that is as an enlargement of the previously given primary right by the taking away of certain defenses and the furnishing of a presumption to aid recovery which would seem to be substantive in nature. Another way of looking at the situation is that proof supplied by statute is substantive in nature in that within the framework of the basic right given, an additional right is given to have the defendant presumed negligent at least to the extent to which negligence is alleged. At least I think we can well say that the sort of presumption granted by the Nevada statute is not such as calls for the application of the law laid down in this state in the case of *certain* presumptions, to wit: that they go out of the case where any evidence tending to rebut them is introduced into the case. The Nevada statute itself appears to require that the presumption created by it remains in the case as proof to go to the jury with the rebuttal testimony. This seems to me in nature substantive, perhaps for the reasons specified in the opinion i. e., that it is so closely interwoven with the

basic right to recover for negligence as to make it an inseparable part of that right.

I think one of the reasons, if not the sole reason, for dispensing with the doctrine of contributory negligence and for presuming negligence on the part of the employer in the case of an employer who rejects the act was to persuade and even coerce the employer to accept the act. While the failure to accept the act is not made punitive as is the failure to procure insurance under our act, it is highly coercive.

In this case it is unnecessary to determine whether the presumption of negligence is confined to that alleged in the complaint, or if it applies to any negligence which may reasonably have caused the injury, because in this case I cannot think of any negligence of the employer which could have caused the damage except that alleged. Certainly if a plaintiff can simply allege negligence in general or specifically as to some particular negligence and yet get the benefit of the presumption as to any additional or different negligence which may support a verdict, I see most serious difficulties in making up and presenting issues to the jury. The language in the cases of *Reeder* v. *Pincolini*, 59 Nev. 396, 94 P. 2d 1097, and *Cahow* v. *Michelas*, Nev., 149 P. 2d 233, seems to lean toward the proposition that the presumption furnished the plaintiff employee by the Nevada statute is a presumption that the defendant was guilty of any negligence which would support a verdict for the plaintiff regardless of whether alleged. I have a serious doubt that the Nevada statute meant to inject into a complaint which only assigned negligence generally any negligence which might reasonably be conceived as giving support to a verdict for the plaintiff. If such be the holding it would seem that the jury might arrive at a verdict on some possible presumed negligence which was never, because of the presumption, specifically brought to its notice and in regard to which the employer might not have produced rebuttal testimony. It would require the court to speculate as to all possible negligences which could support a verdict which were by the presumption, thus broadly con-

strued, injected into the case and then try to determine whether there was rebuttal evidence to go to the jury on all such negligences. If there were not rebuttal evidence on all such conceivable negligences it would seem that a verdict for the plaintiff would have to be directed on the presumed negligence not rebutted. The court would be at a loss as to what issues it was trying. I am of the present opinion that the presumption is one which takes the place of proof but does not dispense with the necessity of allegations of the negligence charged. And as to this matter I think it probable that we would be guided by the law of this jurisdiction rather than by the decisions of the Nevada court for the manner in which an issue is to be pleaded and presented would seem definitely to be a matter of practice and procedure.

In concurring in the opinion of Mr. Chief Justice LARSON I assume that questions as to whether the Nevada act meets the tests of the Federal Constitution are not foreclosed by the opinion. Such questions have not been raised so no ruling is called for in that regard.