M & K CORPORATION et al. v. INDUSTRIAL COMMISSION et al.

No. 7054.   Decided January 28, 1948.   (189 P. 2d 132.)

490

See 71 C. J., Workmen's Compensation Acts, sec. 464. Workmen's Compensation; injury received while doing prohibited act, see note, 119 A. L. R. 1409.

*Elias L. Day* and *Arthur E. Moreton,* both of Salt Lake City, for plaintiffs.

*Grover A. Giles,* Atty. Gen., and *Clyde & Coray* and *A. John Brennan,* all of Salt Lake City, for defendants.

WADE, Justice.

Plaintiffs obtained a writ of certiorari to review an Industrial Commission award to his dependents for the death of Willard James Harries. At the time of his death Harries was the general superintendent in charge of a building project at the Utah State Agricultural College at Logan, Utah, where approximately three hundred houses were being constructed by his employer, the plaintiff Modjlin & Kahn Corporation, hereinafter called M & K Co. The other plaintiff, Hartford Accident & Indemnity Company, carried the Workmen's Compensation Insurance Liability for the M & K Co.

On Saturday, August 31, 1946, as such superintendent, Harries took a ten wheel truck of his employer from Logan to Salt Lake City where he loaded it with roofing materials belonging to his employer, for use in the Logan project, and accompanied by his fourteen year old son proceeded to return with the truck and materials to Logan. In Sardine canyon on the most direct route to his destination, while the son at his father's request was driving with his father on the seat beside him directing the operation, the truck was overturned and the father killed.

The son was not an employee of M & K Company; he did not have, and on account of his age could not obtain a driver's license, and was therefore forbidden by law to drive a vehicle on the highways of this state. See Sec. 57-4-4 and 57-4-7, (all sections cited except where otherwise stated are to U. C. A. 1943). It is unlawful and made a misdemeanor for any person to knowingly permit a minor under the age of 18 years without a license to drive any vehicle on any highway of this state. Secs. 57-4-29 and 57-4-33.

Our only question is: Was the deceased "killed, by accident arising out of *or* in the course of his employment," as

that provision is used in Sec. 42-1-43. Since the 1919 amendment to that section when the word "or" which we have italicized above was substituted for the word "and" it is not necessary for the accident to arise both out of and occur in the course of his employment, it is sufficient if the accident only arises in the course of his employment. Workmen's Compensation statutes both in this country and throughout the British Empire usually require, as did ours before the amendment, that the accident arise both out of and in the course of the employment, and this must be kept in mind in considering the decisions of other jurisdictions. We have often pointed out this distinction and indicated in many cases that the recovery was allowed on that account and that it probably would not have been allowed without the amendment. *Tavey* v. *Industrial Commission,* 106 Utah 489, 150 P. 2d 379; *Park Utah Consolidated Mines Co.* v. *Industrial Commission,* 103 Utah 64, 133 P. 2d 314; *Cudahy Packing Co.* v. *Industrial Commission,* 60 Utah 161, 207 P. 148, 28 A. L. R. 1394, affirmed *Cudahy Packing Co.* v. *Parramore,* 263 U. S. 418, 44 S. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532; *State Road Commission* v. *Industrial Commission,* 56 Utah 252, 190 P. 544; *Twin Peaks Canning Co.* v. *Industrial Commission,* 57 Utah 589, 196 P. 853, 20 A. L. R. 872, and *Utah Apex Mining Co.* v. *Industrial Commission,* 67 Utah 537, 248 P. 490, 49 A. L. R. 415. We have also repeatedly held that this statute should be liberally construed and if there is any doubt respecting the right to compensation it should be resolved in favor of a recovery. See cases above cited and *Chandler* v. *Industrial Commission,* 55 Utah 213, 184 P. 1020, 8 A. L. R. 930. This case was before the amendment.

In the *Utah Apex Mining Co.* v. *Industrial Commission,* supra[67 Utah 537, 248 P. 493], we quoted with approval from 71 C. J. 644, under Workmen's Compensation Acts, Sec. 396, where it is said:

"* * * the words 'arising out of' are construed to refer to the origin or cause of the injury, and the words 'in the course of' to refer to the time, place, and circumstances under which it occurred. * * *."

The distinction being that in order for an accident to arise out of the employment a more definite and closer causal relationship is required than is necessary for an accident to arise in the course of the employment but in the latter a closer relationship must exist as to time and place and as to the nature and type of work being performed. In other words the requirement that the accident arise in the course of the employment is satisfied if it occurs while the employee is rendering service to his employer which he was hired to do or doing something incidental thereto, at the time when and the place where he was authorized to render such service. Current Trends in Workmen's Compensation by Horovitz, on what constitutes "arising out of" commencing at page 507, and on what constitutes "in the course of" commencing at page 666.

However, where a disease is involved, even under the liberal provisions of our statute, we have refused to open the door to a recovery for all injuries, without any causal relationship between the employment and the accident, merely because the accident occurs on the premises of the employer during the hours of employment while the employee is rendering the service or something incidental thereto for which he was hired. *Dee Memorial Hospital Ass'n* v. *Industrial Commission*, 104 Utah 61, 138 P. 2d 233; *Robertson* v. *Industrial Commission*, 109 Utah 25, 163 P. 2d 331; See also Horovitz's Current Trends in Workmen's Compensation pages 666 to 668, where the author justifies the above requirement even where it is only necessary that the accident arise in the course of the employment on the ground that the statute only requires compensation insurance and not health insurance.

So our problem is narrowed to the determination of whether deceased was acting in the course of his employment at the time of the accident. If he was, there is no question but what the necessary causal relationship existed between the employment and the accident. Here no disease is involved and at the time of the accident, Harries' work

required him to be on that very truck at the time when it overturned. That a truck may be overturned on the mountain road between Salt Lake City and Logan is one of the hazards to which his employment of trucking materials over that route exposed him.

Deceased was the superintendent of M & K Corporation's building project in Logan. As such he had the responsibility of assigning the various employees including himself to the various jobs, and of directing and overseeing all of the work. *Morgan* v. *Industrial Commission,* 92 Utah 129, 66 P. 2d 144. Plaintiffs concede that deceased was in the course of his employment in assigning to himself the job of taking this truck to Salt Lake City and returning with these materials, as long as he was at the wheel operating the truck. They even go further and say that deceased would have been in the course of his employment had he turned the operation of the truck over to another person, if such person was a competent and licensed driver and employed by the company, so long as deceased rode with such person on the truck in charge of its operation while trucking these materials back to Logan. Thus they concede, as they must, that deceased was authorized under his employment to assign to himself as well as other employees of the company the various tasks to be done in the course of the construction project, and that he was in charge of and had the duty of supervising all of that work. They concede that he properly assigned to himself the job of trucking these materials from Salt Lake City to Logan and that he might have engaged another competent licensed driver to go with him and change him off in the driving of this truck without departing from the course of his employment. But they contend that when deceased turned the operation of this truck over to his son who was not an employee of the company and to whom deceased was forbidden by law to allow to drive, and who, plaintiffs contend, was not a competent driver, he thereby departed from the course of his employment and his dependents cannot recover.

We are only incidentally concerned with the fact that the boy was not an employee of the company. Since the boy is not claiming the right to recover for his own injuries, the fact that he was not an employee is only material here to the extent that it throws light on the question of whether his father was acting in the course of his employment. That fact did not change the nature of the act or service which deceased was rendering for his employer at the time of the accident. He was doing exactly the same thing in the same manner at the same time and in the same place as he would have been doing had the boy been an employee of the company and a competent and licensed driver. He was seated on the truck beside the driver, in charge of its operation and supervising the taking of this truck loaded with materials to Logan. Unless the fact that deceased allowed the boy to drive, who was not an employee of the company and to whom it was unlawful for deceased to turn over the driving of the truck, is sufficient to constitute a departure from the course of his employment then the award of the commission must be sustained.

Plaintiffs argue that under the *Utah Copper Co.* v. *Industrial Commission,* 62 Utah 33, 217 P. 1105, 33 A. L. R. 1327, this award must be vacated. There the deceased, while employed as a locomotive brakeman, temporarily changed jobs with the fireman and while acting in that capacity was accidentally killed and the commission awarded to his dependents compensation for his death. The engineer with whom the deceased was working made no objection to the change, there were no company rules against it and each of the parties to the change were capable of doing the work of the other. We held that the employer has the right to choose his employees and assign to each one the work which he wishes him to do and since deceased was not doing the work which he was assigned to do and was not employed to do the work he was doing he departed from the course of his employment and therefore the award was vacated.

The case is clearly distinguishable from this one: There the deceased was employed to do the work of a brakeman

he was not doing that work or anything incidental thereto, when he ceased to do that work he departed from the course of his employment. The employer did not employ him to do the work of a fireman and that work was not incidental to his work as a brakeman. Neither the deceased himself nor the fireman with whom he changed, nor the engineer with whom he worked, had any authority to émploy him to do the work of a fireman and there was no emergency which required the change. We simply held that the fact that he was voluntarily doing work which was beneficial to his employer under those conditions did not make him an employee authorized to do the work of a fireman. Therefore he was not in the course of his employment at the time of the accident and his dependents could not recover.

Here the deceased did not leave or abandon the work he was employed to do nor did he take a different job of another which he was not employed to do. He remained right on the job of bringing this truck load of materials back to Logan. He was performing the very services that plaintiffs' concede he was employed to do, that of supervising the driving of that truck. Supervising the work of others was one of the things which he was hired to do. The *Utah Copper Co.,* supra, case has no bearing on the question of whether the fact that the deceased unlawfully allowed his son to drive the truck constituted a departure from the course of his employment. For the time being we will not consider that phase of the case. Nor does it decide or throw any light on the other phase of the question, whether the fact that deceased allowed his son to drive that truck who was not an employee of his employer company, constituted a departure from the course of his employment. No such facts were presented in that case. We will first pursue the last stated phase of our problem.

The cases cited below from other jurisdictions decide the question, of whether a person who is employed to drive a vehicle departs from the course of his employment by allowing a person not employed by the employer to operate the same while the driver remains in the vehicle and supervises

the driving. The first two cases cited below did not allow a recovery, the other three did: *Ginther* v. *J. P. Graham Transfer Co.*, 348 Pa. 60, 33 A. 2d 923, 148 A. L. R. 704; See note thereto commencing at page 708; *Morris & Co.* v. *Industrial Commission*, 295 Ill. 49, 128 N. E. 727; *Byam* v. *Inter-State Iron Co.*, 190 Minn. 132, 250 N. W. 812; *Kopp* v. *Bituminous Surface Treating Co.*, 179 Minn. 158, 228 N. W. 559, and *Employers' Liability Assurance Corporation* v. *Industrial Accident Commission*, 36 Cal. App. 568, 177 P. 171.

*Ginther* v. *J. P. Graham Transfer Co.*, supra, is the most recently decided of the cases and its prevailing and dissenting opinions represent the divergent views on the subject. Ginther was employed to drive a delivery truck and in making a delivery he took with him Cooper and Romigh who were part-time employees of his employer but who were not then on duty and there was some drinking on this trip. It was against the positive orders of the employer to allow drinking or carry passengers while on duty but the court held that this was immaterial. While returning from making this delivery, Ginther allowed Romigh to drive while he sat on the seat and directed the operation when an accident occurred in which Ginther lost his life. The Industrial Commission awarded compensation and the lower courts sustained the award to his dependents but the prevailing opinion reversed such award and held that:

"* * * When Ginther left the wheel and delegated its operation to another he completely abandoned his most important service to the employer and was not in the course of his employment * * *." [348 Pa. 60, 33 A. 2d 924.]

The dissenting opinion held that:

"* * * In order to test the correctness of this ruling we must first * * * ascertain what the 'duty' was that was 'entrusted to him', and what his 'employment' was from the course of which he is said to have 'removed himself.' * * * it then became his duty to see that the truck was returned to his employer's garage. He was so engaged when the accident happened. It is true that he had relinquished the actual mechanical operation to Romigh, but he, Ginther,

remained in charge, continuing to sit on the front seat and superintending Romigh's driving."

That opinion concluded that his dependents were entitled to recover.

The Pennsylvania statute, 77 P. S. § 411, like ours requires only that the accident arise in the course of his employment. The statutes involved in the other four cases above cited require both that the accident arise out of and in the course of the employment. In *Morris & Co.* v. *Industrial Commission,* supra, the only other one of these cases in which the court denied compensation did so on the ground that the accident did not arise out of his employment, but expressly held that the accident arose in the course of his employment, so that case is distinguishable from our case on that ground. According to its decision it would have allowed compensation had the Illinois statute been like ours. In the other three cases cited above on this question compensation was granted, the courts in each case holding that the accident not only arose out of but also in the course of the employment. In the two Minnesota cases the court stated that it was conceded and there could be no question but that the accident arose in the course of the employment. The only difficulty encountered in those cases was to determine whether the accident arose out of the employment. The court concluded that it did, largely on the same reasoning adopted in the dissenting opinion in the *Ginther* v. *J. P. Graham Transfer Co.* case, supra. In the Illinois and Minnesota cases the employee was not violating any express statutory or employer instruction as he was in the Pennsylvania and California cases, but in *Kopp* v. *Bituminous Surface Treating Co.,* supra, the employee took along a bright 15 year old boy who was not an employee of the employer and who was driving at the time of the accident. In all five cases above cited on this question the facts were less favorable to a recovery than our case because of the fact that the injured employee was only hired to drive the vehicle and make deliveries and do other incidental things,

and in none of them was he a foreman or superintendent of a job with authority to employ or supervise the work of others or an entire job as was the deceased in the present case.

The Minnesota case of *Byam* v. *Inter-State Iron Co.*, supra, distinguishes the *Utah Copper Co.* v. *Industrial Commission case*, supra, on its facts largely as we have done herein, and makes the comment, in effect, that it was a very strict construction of a very liberal statute.

In the case of *Employers' Liability Assur. Corp.* v. *Industrial Accident Commission*, supra, Booth was employed to operate a street flushing truck. He was expressly forbidden to allow any other person to ride on the vehicle with him, but he did allow one Schilling, a competent driver, to operate the vehicle while he operated the lever which controlled the discharge of water and while so engaged was accidentally injured. The court distinguished on the facts that case from cases similar to our *Utah Copper Co.* v. *Industrial Commission* ,supra, on the ground that in that class of cases the employee completely abandoned the work which he was employed to do and was performing services which he was not employed to do and said [36 Cal. App. 568, 177 P. 172]:

"* * * The employee of Tyron & Brain did not abdicate either the place or the character of his employment. He gave up a part of his work to another, it is true, as he permitted Schilling to run the truck, but it was strictly within the line of his duty to operate and care for the levers which control the flow of water from the tank of of the truck to the street. The same may be said of his attempt to prevent the wrench from falling from the footboard. He was not outside the course of his employment merely because he allowed a stranger to perform a part of his task while he was engaged in the performance of the remainder of it. * * *"

Although the California statute requires that the accident arise both out of and in the course of the employment the court did not consider the question of whether it arose out of the employment. Apparently holding under the facts of that case if the accident arose in the course of the employ-

ment it must follow that it arose out of the employment. The holding that since Booth was performing part of the services which his employment required of him and is therefore entitled to recover and that the fact that he allowed a stranger to perform a part of his task did not take him out of the course of his employment are equally applicable to the facts of our case. Harries may not have been doing any manual labor which his employment required of him at the time of this accident but he was supervising the taking of that truck load of materials to Logan in accordance with the nature of his employment.

Plaintiffs argue and the cases of *Ginther* v. *J. P. Graham Transfer Co.*, supra, and *Morris & Co.* v. *Industrial Commission*, supra, seem to indicate that since the employee, having turned the operation of the truck over to a stranger, was doing nothing which was beneficial to his employer he had departed from the course of his employment. But that is not necessarily true and we, as well as courts of other jurisdictions, have so held. In the case of *Twin Peaks Canning Co.* v. *Industrial Commission,* supra, a boy who was employed by the Canning Company while the machinery was stopped and he had nothing else to do, took an elevator, which he had been forbidden to use, on to a floor where his duties did not require him to go and there, while engaged in some horseplay, which was of no benefit to his employer, was accidently killed. We held that he had not departed from the course of his employment on the ground that what he was doing was what could be expected under the circumstances and it was therefore incidental to his work. To the same effect is *State Road Commission* v. *Industrial Commission* where a road worker on account of a storm stopped work and was seeking shelter when struck by lightning and killed. There we held that although the accident did not arise out of it, he was in the course of his employment. That what he was doing at the time, although of no benefit to his employer, was incidental to his work and what could be expected under the circumstances, and that his work caused him to be where he was at the time the

lightning struck. See Horovitz Current Trends in Workmen's Compensation, at page 525, and pages 768 to 770.

We conclude that under the circumstances of this case the fact that the boy was not an employee of the employer company but was allowed to drive the truck under his father's supervision was not sufficient to constitute a departure by deceased from the course of his employment. That where as here the employee was accidentally killed while he was in the place where his employment required him to be, at a time when he was required to do such work, and was performing a part of the services which his employment required him to do, even though he surrendered a part of his duties to a stranger, he did not thereby necessarily depart from the course of his employment.

This brings us to the consideration of the second phase of our problem which is: Does the additional factor that the deceased unlawfully allowed his son to drive this truck, who on account of his age was prohibited by law from driving, constitute a departure by deceased from the course of his employment?

Not every violation by an employee of a statutory provision or of a rule or regulation of his employer constitutes a departure from the course of his employment. The general rule is that where the employee, at the time of the accident, is engaged in doing a thing or rendering a service which he is employed or authorized to do, either expressly or by the nature of and the surrounding facts and circumstances of his employment, or is doing something which is incidental thereto, but does such act or renders such service or incidental in an unlawful or forbidden manner, he does not thereby depart from the course of his employment even though the accident occurs as a consequence of such violation. It is only when the act or service which the employee is performing is itself prohibited as distinguished from the manner in which the act is done or the services performed, that the violation of a statutory provision or of a rule or regulation of the employer

takes the employee outside of the course of his employment and defeats a recovery. The scope, sphere and course of the employment may be expressly limited by rules and regulations of the employer or by statutory enactment. Where the nature of the statutory regulation or rule of the employer is such that under all the surrounding facts and circumstances it is apparent that it was intended that it should have the effect of limiting the scope of the employment and not merely to limit the manner of doing an act which is not prohibited, the violation of such statute or rule constitutes a departure from the course of his employment. *Moore & Company* v. *Donnelly,* English House of Lords, 1 A. C. 329, 23 A. L. R. 1135; *Esther Bros.* v. *Phillips,* English House of Lords, 91 L. J. K. B. N. S. 470, 23 A. L. R. 1148; *Union Colliery Co.* v. *Industrial Commission,* 298 Ill. 561, 132 N. E. 200, 23 A. L. R. 1150; *Fournier's Case,* 120 Me. 236 113 A. 270, 23 A. L. R. 1156, and annotation at page 1161; *Imperial Brass Mfg. Co.* v. *Industrial Commission,* 306 Ill. 11, 137 N. E. 411, 26 A. L. R. 161, and annotation at page 166; *Storm* v. *Hought,* 56 N. D. 663, 219 N. W. 213, 58 A. L. R. 186; *King* v. *Empire Collieries Co.,* 148 Va. 585, 139 S. E. 478, 58 A. L. R. 193, and annotation at page 197; *Great A. & P. T. Co.* v. *Industrial Commission,* 347 Ill. 596, 180 N. E. 460, 83 A. L. R. 1208, and annotation at page 1211; *Sloss-Sheffield Steel & Iron Co.* v. *Nations,* 236 Ala. 571, 183 So. 871, 119 A. L. R. 1403, and annotation at page 1409; *Twin Peaks Canning Co.* v. *Industrial Commission,* supra; *Salt Lake City* v. *Industrial Commission,* 103 Utah 581, 137 P. 2d 364; *Buhler* v. *Maddison,* 109 Utah 245, 166 P. 2d 205.

The foregoing test for determining whether the violation of a statutory or employer's regulation takes the employee out of the course of his employment, in many cases is not easy to apply. The difficulty is encountered in determining whether the doing of the act which violates the statutory or employer's regulation constitutes the doing of a task or service which the employee is hired to do in a prohibited manner, or the doing of an act which the employee is prohibited from doing in the course of his employment. The

true test is : Was the regulation calculated to limit the scope of the employment or was it calculated only to govern the manner of performing a more comprehensive task. Different courts have reached opposite conclusions in applying this test. For instance, in *Buhler* v. *Maddison,* supra, one Buhler was employed to do blasting. After lighting a fuse which failed to explode he returned to the danger zone in such a short time, that it constituted a violation of the safety rule. We held that he was employed to do blasting, that the safety rule which he violated did not prohibit him from doing that work but merely forbade him to do it in the manner he did, and therefore it did not limit the course of his employment in that respect. The English courts have reached the opposite result in a similar case. *Moore & Company* v. *Donnelly,* supra.

In this respect there is room for great divergence of opinion. No comprehensive, all inclusive rule has been or can be stated which will determine all cases, each case has to be determined on its own facts. In individual cases courts have considered many factors some of which have little or no bearing under the facts in other cases. But it must always be kept in mind that the question to be determined is : Was the employee acting in the course of his employment? And that in determining that question it is necessary to decide: What was he employed to do ?

Plaintiffs assume that since deceased unlawfully allowed his son to drive, such was the sole cause of his death. They assert that the fact greatly increased the hazards incident to his employment, that such was the proximate cause of his death and that with the boy driving the deceased could not possibly perform any service which would benefit his employer. They illustrate their contention by saying that obviously had deceased allowed a one year old child to drive this truck down Sardine canyon he would not have been acting in the course of his employment. Although the above claims, if true, may have some bearing in determining whether deceased was acting in the course of his employment, they are not necessarily the deciding factors in this

case. We must keep in mind that neither negligence nor wilful misconduct, even though such were the sole proximate cause of his death, would defeat an award in this case. Under Sec. 42-1-43, a recovery is granted in every case where an employee is killed by accident arising in the course of his employment, "provided the same is not purposely self-inflicted."

Plaintiffs concede that this accident was not wilfully self-inflicted and that neither negligence nor wilful misconduct will defeat a recovery unless they have the effect of taking the employee out of the course of his employment. But they contend that in determining whether the employee was acting in the course of his employment, where the employee is guilty of negligence or wilful misconduct or was doing an act which obviously would not be beneficial to the employer but could only have the effect of destroying his property, then such facts may be considered in determining whether the employee was acting in the course of his employment. They assert that the courts hold that where an employee is violating a statutory provision, which is the proximate cause of the accident then he is acting outside of the course of his employment and no recovery can be had therefor. They however cite no cases to that effect and I have found no such cases. If that were the rule there could have been no recovery in the *Twin Peaks Canning Company* v. *Industrial Commission,* supra, or *Buhler* v. *Maddison,* supra. In each of those cases we allowed a recovery notwithstanding the fact that the violation of the regulation was a contributing proximate cause, if not the sole cause of the accident.

Plaintiffs quote from the *Twin Peaks Canning Co. case,* supra [57 Utah 589, 196 P. 858], to the effect that as long as the employee "refrains from exposing himself voluntarily to known or visible hazards or dangers, or what he does is "within the bounds of reason," he does not depart from the course of his employment. They contend that if the employee does not stay within the bounds of reason in voluntarily exposing himself to known or visible hazards

or dangers in violation of statutory or employer regulations he thereby departs from the course of his employment. There is no question but that the rule as stated was a correct application of the law to that case. There the employee at the time of the accident was not doing anything which his employment required him to do or which had any tendency to benefit his employer. He engaged in some horseplay which involved the use of an elevator some distance from his work which he was forbidden to use, at a time when there was no work for him to do. Such activities were the sole cause of his death. Here Harries was engaged in taking a truck loaded with materials to his job in Logan, he was on the truck where his work required him to be and was directing the operation of the truck, which was the type of work he was employed to do. In both cases the question is, was he within the course of his employment? While the questions suggested by counsel may have a bearing on that question they are not necessarily conclusive thereon.

If Harries was within the course of his employment it is immaterial whether he was guilty of negligence or wilful misconduct. Although such factors in some cases might have some value in determining that question once that question is determined they have no tendency to defeat a recovery. This being true, while the fact that deceased met his death by reason of the truck being overturned while the boy was driving suggests that the accident might have been caused by his lack of skill and experience in driving, still the recovery cannot be defeated by that fact. If deceased was acting in the course of his employment his dependents can recover even though his death was caused by failure of his son to properly drive the truck the same as he could had his death been caused by an accident which had no connection with the manner of driving the truck, such as being struck by lightning or by a boulder rolling down the mountain side and striking and killing him. Because if allowing his son to drive took deceased out of his course of employment he was not within the course of his employment just as much if the accident was caused

by the inability of the boy to drive as he would be if it resulted from some independent cause. No one would contend that if the accident was caused by an independent cause that a recovery could not be had.

The assumption which plaintiffs make that the boy's driving caused the accident is not justified by the record. Except that the boy was driving when the truck was overturned and Harries was killed there is no evidence in the record of what caused the accident. For all that appears the boy was a competent driver and handled the truck on this occasion as well as his father could have done had he been driving. The accident might have been caused solely by the negligence of another driver, by a defective road condition or by a mechanical defect in the truck. At the hearing the applicant offered to prove that the boy had had previous driving experience with trucks and on one occasion had driven a truck for this employer. This offer was rejected upon the objection of the plaintiffs that it was immaterial. If it is material in determining whether deceased was in the course of his employment to determine whether the boy's driving was the cause of the deceased's death, or whether it increased the hazards to which he was exposed, or whether his driving could be of benefit to the employer, then that evidence was material and should have been admitted. By their objection to that evidence plaintiffs have precluded themselves from relying on the argument that deceased went beyond the bounds of reason in allowing the boy to drive. Because if the boy was an experienced truck driver notwithstanding his age it would not be going beyond the bounds of reason for his father to allow him to drive on this occasion. In view of the forgoing facts it is not necessary for us to determine what would have been the effect had plaintiff allowed a one year old child to drive the truck, because there is no similarity between the situation and the facts here presented.

Plaintiffs claim that what deceased was doing at the time of the accident could not possibly be of any benefit to his employer is not well founded. That claim is based on one

of two assumptions: (1) That the boy was so inexperienced that an accident must surely happen if he drove. As previously pointed out this assumption is not justified by the evidence. (2) That since deceased was probably a better driver than his son, even though the son was a competent driver, it would be to the employer's advantage to have the father drive. Still the commission was entitled to conclude from the evidence that the boy was an experienced driver and that with him driving the truck the objects of the employer of getting the load of materials to the Logan job would probably be accomplished, and therefore in allowing the boy to drive deceased did not necessarily depart from the course of his employment.

From the foregoing we conclude that deceased did not depart from the course of his employment. That the task which he was performing at the time of the accident was that of trucking the load of materials to his job at Logan, and in so doing he was riding on the truck as he should have been and was directing the operation thereof which was in accordance with the nature of the work he was employed to do. That in so doing that job he was not violating the law. That in permitting his son to drive he did violate the law but that went only to the manner in which he was performing his work and not in the job which he was doing and therefore it did not constitute a departure from the course of his employment. The award is sustained with costs to the defendants.

McDONOUGH, C. J., and PRATT, J., concur.

WOLFE and LATIMER, JJ., concur in the results.